**23-1940**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DENNIS SPEERLY, ET AL.,

*Plaintiffs-Appellees,*

v.

GENERAL MOTORS LLC,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Eastern District of Michigan

### BRIEF OF APPELLANT GENERAL MOTORS LLC

Renee D. Smith
renee.smith@kirkland.com
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
312-862-2000

Jason M. Wilcox
jason.wilcox@kirkland.com
Kirkland & Ellis LLP
1301 Pennsylvania Ave. NW
Washington, D.C. 20004
202-389-5000

Richard C. Godfrey
richardgodfrey@quinnemanuel.com
R. Allan Pixton
allanpixton@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Ste. 2700
Chicago, Illinois 60606
312-705-7400

Stephanie A. Douglas
douglas@bsplaw.com
Susan McKeever
mckeever@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd, Ste. 400
Troy, MI 48084
248-822-7800

*Counsel for Defendant-Appellant General Motors LLC*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

General Motors LLC is wholly owned by General Motors Holdings LLC, which is wholly owned General Motors Company, a publicly traded entity. BlackRock, Inc. is a publicly held corporation that owns 10% or more of General Motors Company's stock. No other parent corporation or any other publicly held corporation owns 10% or more of General Motors Company's stock.

# TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.....................................i

STATEMENT IN SUPPORT OF ORAL ARGUMENT .........................................1

INTRODUCTION ...............................................................................................2

STATEMENT OF JURISDICTION.....................................................................6

STATEMENT OF THE ISSUES............................................................................6

STATEMENT OF THE CASE..............................................................................7

    A.    The Record Shows Myriad Individualized And Uncommon Issues. ...........................................................................................8

        1.    Uncommon Defects. ........................................................8

        2.    Uncommon Consumer Experiences And Class Vehicles.........10

            a.    Different Defect Manifestations. ....................................10

            b.    Different Causes Of "Transmission" Issues. ..................11

            c.    Different Consumer Perceptions And Experiences.........12

            d.    Different Repairs And Warranty Coverage....................13

            e.    Different Vehicles And Transmission Calibrations. ......15

            f.    Different Purchase Scenarios.........................................16

    B.    Plaintiffs' Experts Offer Opinions And Models That Obscure Individual Issues And Pay Damages To Uninjured Consumers.........18

        1.    Dr. Wachs Predicts Future "Failure" Rates Based On An Admittedly Incorrect Assumption Of A Single Defect. ..........18

        2.    Eichmann's Average-Based Aggregate Damages Admittedly Would Compensate Uninjured Class Members....................................................................................19

C.    The District Court Ignores Or Defers Resolution Of Predominance Issues, Finds GM Waived Arbitration Rights Against Those Who Were Not Parties To The Case, And Certifies 26 Statewide Classes. ...........................................20

SUMMARY OF THE ARGUMENT ....................................................21

STANDARD OF REVIEW ...................................................24

ARGUMENT ...................................................24

I.    THE DISTRICT COURT ERRED BY CERTIFYING CLASSES COMPOSED OF COUNTLESS MEMBERS WHO NEVER HAD A TRANSMISSION DEFECT MANIFEST IN THEIR OWN VEHICLES. ...................................................24

A.    The Order Violated Article III Standing Requirements......................25

B.    The District Court Erred By Certifying Classes Under State Laws Requiring That A Defect Manifest In Plaintiff's Own Product. .........28

C.    The Manifest Defect Problem Highlights The Incurable Predominance Issues That The District Court Failed To Address. ...........................................................................................31

II.    THE DISTRICT COURT ERRED BY CERTIFYING CLASSES WHERE INDIVIDUAL ISSUES PREDOMINATE. ...................................33

A.    The Certification Opinion Did Not Meaningfully Address Or Analyze The Impact Of Two Distinct Alleged Defects.....................34

B.    The District Court Did Not Meaningfully Address Or Analyze Uncommon And Individualized Evidence Regarding The Existence Or Perception Of The Alleged Defects..............................36

C.    The District Court Erred By Failing To Address Other Substantive Variations In State Law, Including Individualized Evidentiary Requirements. .................................................39

1.    Express Warranty Claims Require Individualized Evidence Of Both Present And Inadequate Repair...................39

2.  The District Court Overlooked State Law Variations In Class-Defeating Elements Of Reliance And Causation ............ 43

3.  The District Court Ignored State Law Variations In Merchantability. ........................................................................ 45

4.  The District Court Did Not Apply State Substantive Bars On Class Actions .................................................................... 47

5.  The District Court Ignored Individualized And Uncommon Differences Among Current And Former Owners. ............................................................................ 48

D.  The District Court's Disregard Of Predominant Individualized Issues At Certification Cannot Be Cured With An Undefined "Culling" Procedure At An Unspecified Point In The Future. ............ 49

III.  THE DISTRICT COURT ERRED BY RELYING ON CLASSWIDE DAMAGES MODELS THAT OBSCURE OR IGNORE INDIVIDUAL ISSUES AND COMPENSATE UNINJURED CLASS MEMBERS. ................................................................................ 51

IV.  THE DISTRICT COURT ERRED BY FINDING GM WAIVED ITS ARBITRATION RIGHTS AGAINST NON-PARTIES AND CERTIFYING CLASSES COMPOSED OF 40% OR MORE OF MEMBERS WHO AGREED TO ARBITRATE THEIR CLAIMS. ............ 54

CONCLUSION ................................................................................ 57

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME ............................. 58

LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENT .................... 58

CERTIFICATE OF SERVICE ................................................................ 59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Ocwen Loan Servicing, LLC*,
    321 F.R.D. 125 (E.D. Pa. 2017)..........................................................44

*Albright v. Christensen*,
    24 F.4th 1039 (6th Cir. 2022) ...........................................................47

*American Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)....................................................................54, 56

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013).........................................................3, 24, 30, 43

*Apex Oil Co. v. Jones Stephens Corp.*,
    881 F.3d 658 (8th Cir. 2018) ............................................................44

*Avery v. State Farm Mut. Auto Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005)................................................................48

*BAE Sys. Info. & Elecs. Sys. Integration, Inc. v. SpaceKey Components, Inc.*,
    752 F.3d 72 (1st Cir. 2014)...............................................................39

*Beatty v. Ford Motor Co.*,
    2021 WL 3109661 (W.D. Wash. July 8, 2021).................................38

*Becker v. Cont'l Motors, Inc.*,
    709 Fed. App'x 263 (5th Cir. 2017) .................................................41

*Bennett v. Quest Diagnostics, Inc.*,
    2023 WL 3884117 (D.N.J. June 8, 2023)..........................................44

*Berry v. City of Chicago*,
    181 N.E. 3d 679 (Ill. 2020)...............................................................29

*Bledsoe v. FCA US LLC*,
    663 F. Supp. 3d 753 (E.D. Mich. 2023) ...........................................44

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ...............................................................53

*Brown v. Electrolux Home Prods., Inc.*,
   817 F.3d 1225 (11th Cir. 2016) ....................................................24, 33

*Carlson v. Gen. Motors Corp.*,
   883 F.2d 287 (4th Cir. 1989) ...............................................................29

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) .............................................................48

*Chen-Oster v. Goldman, Sachs & Co.*,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020) .................................................55

*Coffey v. Dowley Mfg., Inc.*,
   187 F. Supp. 2d 958 (M.D. Tenn. 2002), *aff'd*, 89 F. App'x 927
   (6th Cir. 2003) .....................................................................................36

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ........................................................................23, 52

*Corder v. Ford Motor Co.*,
   869 F. Supp. 2d 835 (W.D. Ky. 2012) .................................................44

*Daffin v. Ford Motor Co.*,
   458 F.3d 549 (6th Cir. 2006) ...............................................................42

*Daigle v. Ford Motor Co.*,
   713 F. Supp. 2d 822 (D. Minn. 2010) .................................................40

*Dalton v. Ford Motor Co.*,
   2002 WL 338081 (Del. Super. Ct. Feb. 28, 2002) ..............................29

*Delcavo v. Tour Res. Consultants, LLC*,
   2022 WL 1062269 (D. Kan. Apr. 8, 2022) ..........................................44

*Dinerstein v. Google, LLC*,
   73 F.4th 502 (7th Cir. 2023) ...............................................................26

*Dinwiddie v. Suzuki Motor of Am., Inc.*,
   111 F. Supp. 3d 1202 (W.D. Okla. 2015) ...........................................29

*Draffin v. Chrysler Motors Corp.*,
166 S.E.2d 305 (S.C. 1969) ..................................................................40

*EBSCO Indus. v. LMN Enter.*,
89 F. Supp. 2d 1248 (N.D. Ala. 2000)...................................................44

*Eng v. Specialized Loan Servicing*,
500 P.3d 171 (Wash. App. Ct. 2021)......................................................44

*Forby v. One Techs., LP*,
2020 WL 4201604 (N.D. Tex. July 22, 2020)............................................55, 56

*Fox v. Saginaw Cnty., Mich.*,
67 F.4th 284 (6th Cir. 2023) ......................................................*passim*

*Frank v. DaimlerChrysler Corp.*,
741 N.Y.S.2d 9 (N.Y. App. Div. 2002) ...............................................29

*Galitski v. Samsung Telecomc'ns Am., LLC*,
2015 WL 5319802 (N.D. Tex. Sept. 11, 2015) ....................................42

*Gen. Motors Corp. v. Garza*,
179 S.W.3d 76 (Tex. App. 2005)...........................................................44

*Gordon v. Ford Motor Co.*,
260 A.D.2d 164 (N.Y. App. Div. 1999) .............................................46

*Gregory v. Dillard's, Inc.*,
565 F.3d 464 (8th Cir. 2009) ..............................................................53

*Gutierrez v. Wells Fargo Bank, NA*,
889 F.3d 1230 (11th Cir. 2018) ...........................................................55

*Hall v. Marriott Int'l, Inc.*,
344 F.R.D. 247 (S.D. Cal. 2023) ........................................................55

*Harman v. Taurus Int'l Mfg., Inc.*,
661 F. Supp. 3d 1123 (M.D. Ala. 2023)...............................................40

*Hole v. Gen. Motors Corp.*,
442 N.Y.S. 2d 638 (N.Y. App. Div. 1981).........................................40

vii

*Hooker v. Citadel Salisbury LLC*,
2023 WL 3020967 (M.D.N.C. Apr. 20, 2023) ..................................................56

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................37

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018)..................................................................54

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) ..............................................................37

*In re Canon Cameras*,
237 F.R.D. 357 (S.D.N.Y. 2006) ...........................................................30

*In re Checking Acct. Overdraft Litig.*,
780 F.3d 1031 (11th Cir. 2015) ............................................................55

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002) ..................................................................1

*In re Ford Motor Co.*,
86 F.4th 723 (6th Cir. 2023) .........................................................*passim*

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
2012 WL 379944 (D.N.J. Feb. 6, 2012) ...............................................44

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
194 F.R.D. 484 (D.N.J. 2000).............................................................38

*In re Ford Motor Co. Vehicle Paint Litig.*,
1997 WL 539665 (E.D. La. Aug. 27, 1997)..........................................44

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) ...............................................29

*In re Gen. Motors Corp. "Piston Slap" Prod. Liab. Litig.*,
2006 WL 1049259 (W.D. Okla. Apr. 19, 2006)....................................49

*In re Gen. Motors LLC Ignition Switch Litig.*,
2016 WL 3920353 (S.D.N.Y. July 15, 2016)........................................29

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017) ..........................................29, 48

*In re Hall*,
4 F.4th 376 (6th Cir. 2021) ...................................................55

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ...................................................26

*In re OnStar Cont. Litig.*,
278 F.R.D. 352 (E.D. Mich. 2011) .......................................44

*In re Polaris Mktg., Sales Pracs., & Prods. Liab. Litig.*,
9 F.4th793 (8th Cir. 2021) .....................................................25

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013) .....................................55

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
500 F. Supp. 3d 940 (N.D. Cal. 2020), a*ff'd sub nom. Schell v. Volkswagen AG*, 2022 WL 187841 (9th Cir. Jan. 20, 2022) .............................48

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) .................................30, 42, 43

*Jensen v. Cablevision Sys. Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) .................................55

*Johannessohn v. Polaris Indus., Inc.*,
450 F. Supp. 3d 931 (D. Minn. 2020)...................................44

*Johannessohn v. Polaris Indus. Inc.*,
9 F.4th 981 (8th Cir. 2021) ...........................................*passim*

*Kia Motors Am. Corp. v. Butler*,
985 So. 2d 1133 (Fla. Dist. Ct. App. 2008).......................46

*Larsen v. Vizio, Inc.*,
2017 WL 3084273 (C.D. Cal. June 26, 2017)...................44

*Lawrence v. Philip Morris USA, Inc.*,
    53 A.3d 525 (N.H. 2012) ....................................................................44

*Loreto v. Procter & Gamble Co.*,
    515 F. App'x 576 (6th Cir. 2013) ........................................................25

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) .........................................................31, 44

*Martin v. Ford Motor Co.*,
    292 F.R.D. 252 (E.D. Pa. 2013)...........................................................44

*Mazerolle v. DaimlerChrysler Corp.*,
    2002 WL 31367215 (Me. Super. Sept. 20, 2002).........................29, 46

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008), *abrogated in part on other grounds
    by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).........................54

*Monticello v. Winnebago Indus., Inc.*,
    369 F. Supp. 2d 1350 (N.D. Ga. 2005)................................................41

*Myrtle v. Gen. Motors Corp.*,
    106 A.D.2d 883 (N.Y. Sup. Ct. App. Div. 1984) ...............................41

*Neale v. Volvo Cars of N. Am., LLC*,
    2021 WL 3013009 (D.N.J. July 15, 2021) ....................................38, 42

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) .........................................................25, 29

*Overstreet v. Norden Lab'ys, Inc.*,
    669 F.2d 1286 (6th Cir. 1982) .............................................................44

*Patterson v. Beall*,
    19 P.3d 839 (Okla. 2000)......................................................................44

*Pierre v. Midland Credit Mgmt., Inc.*,
    29 F.4th 934 (7th Cir. 2022) ................................................................28

*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*,
    654 F.3d 618 (6th Cir. 2011) ...............................................................50

*Platt v. Winnebago Indus., Inc.*,
   960 F.3d 1264 (10th Cir. 2020) ...........................................................39

*Poulin v. Thomas Agency*,
   746 F. Supp. 2d 200 (D. Me. 2010) .....................................................29

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) ...............................................................45

*Robinson v. Gen. Elec. Co.*,
   2016 WL 1464983 (E.D. Mich. Apr. 14, 2016) ...........................37, 50

*Robinson v. Tex. Auto Dealers Ass'n*,
   387 F.3d 416 (5th Cir. 2004) ...............................................................51

*Rowe v. E.I. duPont de Nemours and Co.*,
   2008 WL 5412912 (D.N.J. Dec. 23, 2008) ..........................................52

*Sanchez-Knutson v. Ford Motor Co.*,
   2016 WL 11783302 (S.D. Fla. July 25, 2016) .....................................42

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
   863 F.3d 460 (6th Cir. 2017) ........................................................*passim*

*Sanneman v. Chrysler Corp.*,
   191 F.R.D. 441 (E.D. Pa. 2000) ....................................................38, 50

*Schellenbach v. GoDaddy.com, LLC*,
   321 F.R.D. 613 (D. Ariz. 2017) ...........................................................44

*Schultz v. United States*,
   529 F.3d 343 (6th Cir. 2008) ...............................................................24

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .............................................................................47

*Simpson v. Hyundai Motor Am., Inc.*,
   603 S.E.2d 723 (Ga. Ct. App. 2004) ...................................................41

*Siqueiros v. Gen. Motors LLC*,
   2021 WL 2115400 (N.D. Cal. May 25, 2021) ......................................29

*Siqueiros v. Gen. Motors LLC*,
    2021 WL 4061708 (N.D. Cal. Sept. 7, 2021) ....................................................30

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011).........................................................................................55

*Snyder v. Komfort Corp.*,
    2008 WL 2952300 (N.D. Ill. July 30, 2008) ....................................................40

*Solum v. Certainteed Corp.*,
    147 F. Supp. 3d 404 (E.D.N.C. 2015) .................................................................44

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    2023 WL 1812157 (C.D. Cal. Jan. 25, 2023)....................................................30

*Soto v. CarMax Auto Superstores, Inc.*,
    611 S.E.2d 108 (Ga App. Ct. 2005).....................................................................46

*Speerly v. Gen. Motors LLC*,
    343 F.R.D. 493 (E.D. Mich. 2023) ...........................................................*passim*

*Spotswood v. Hertz Corp.*,
    2019 WL 498822 (D. Md. Feb. 7, 2019) .........................................................56

*Steamfitters Loc. Union No. 614 Health & Welfare Fund v. Philip
    Morris, Inc.*,
    2000 WL 1390171 (Tenn. Ct. App. Sept. 26, 2000) .........................................44

*Suddreth v. Mercedes-Benz, LLC*,
    2011 WL 5240965 (D.N.J. Oct. 31, 2011) .........................................................46

*Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*,
    37 F.4th 1101 (6th Cir. 2022) .............................................................24, 31, 49

*Tellinghuisen v. Chrysler Grp., LLC*,
    2014 WL 4289014 (Minn. Ct. App. Sept. 2, 2014)...........................................46

*Tershakovec v. Ford Motor Co.*,
    546 F. Supp. 3d 1348 (S.D. Fla. 2021) .............................................................45

*Tershakovec v. Ford Motor Co., Inc.*,
    79 F.4th 1299 (11th Cir. 2023) ...........................................................33, 44, 45, 51

*Tietsworth v. Harley-Davidson, Inc.*,
  677 N.W.2d 233 (Wis. 2004)........................................................................29, 44

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)...............................................................................*passim*

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .........................................52

*Uzuegbunam v. Preczewski*,
  141 S.Ct. 792 (2021)..........................................................................................28

*Valenti v. Hewlett Packard Co.*,
  685 N.W.2d 172 (Wis. App. Ct. 2004)..............................................................44

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................*passim*

*Wallis v. Ford Motor Co.*,
  208 S.W.3d 153 (Ark. 2005) ............................................................................29

*Weidman v. Ford Motor Co.*,
  2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ............................................29, 30

*Whitlock v. FSL Mgmt., LLC*,
  843 F.3d 1084 (6th Cir. 2016) .........................................................................47

*Wolin v. Jaguar Land Rover North Am.*,
  617 F.3d 1168 (9th Cir. 2010) .........................................................................30

*Won v. Gen. Motors, LLC*,
  2022 WL 3010886 (E.D. Mich. July 28, 2022).................................................18

**Statutes**

28 U.S.C. § 1292(e) ................................................................................................6

28 U.S.C. § 1332(d)(2)(A) .......................................................................................6

Ala. Code § 8-19-10(f)...........................................................................................47

Ark. Code Ann. § 4-88-102 ...................................................................................29

Ark. Code Ann. § 4-88-113(f)(1)(B) ......................................................................47

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ................................................................54

La. Stat. Ann. § 51:1409(A) ................................................................47

Tenn. Code Ann. § 47-18-109(g) ................................................................47

**Rules**

Fed. R. Civ. P. 23 ................................................................*passim*

Fed. R. Civ. P. 23(b)(3) ................................................................*passim*

Fed. R. Civ. P. 23(c)(4) ................................................................34

Fed. R. Civ. P. 23(f) ................................................................1, 6

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

As this Court observed, this lawsuit is an example of "increasingly common" "automotive defect cases," and General Motors LLC's Rule 23(f) petition raises "questions that have never been considered by this court and that are percolating in the district courts of this circuit." *In re Gen. Motors LLC*, Case No. 23-0104, R.20-2 (6th Cir. Oct. 23, 2023); *In re Nissan N. Am., Inc.*, Case No. 23-0501, R.24-2 (6th Cir. Oct. 24, 2023). This Court thus granted immediate appeal of the Opinion, finding that "more than one" of the "myriad issues" raised by GM has "arguable merit and warrant further review." *In re Gen. Motors LLC*, ECF No. 20-2. Given the unsettled questions and significance of the issues to automobile and other "class litigation in general," GM respectfully requests oral argument. *See id.* (quoting *In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002)).

## INTRODUCTION

The district court certified 26 statewide classes composed of 800,000+ members whose vehicles have what plaintiffs admit are two different, unrelated types of alleged transmission defects, described vaguely as "shudder" and "shift quality." Those vehicles span 44 different make/model/model year combinations and are equipped with transmissions that varied over time and across vehicles. Most class members have not experienced any transmission problems at all. So plaintiffs piggyback off those who made shudder or shift-quality complaints to speculate that other uninjured class members might have a transmission problem under one or both defect categories. They claim *all* 800,000+ class members overpaid at the time of purchase—even though most of them had neither alleged defect, and their vehicles performed exactly as expected.

Certifying classes with hundreds of thousands of uninjured members violates Article III's standing (and many state laws' manifest defect) requirements. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 988 (8th Cir. 2021). But the district court sidestepped these issues at the certification stage, instead suggesting it might use some undefined "culling" procedure at some point in the future to address these issues. In doing so, it shirked its "duty to actually decide" issues relevant to and dispositive of the

certification determination. *In re Ford Motor Co.*, 86 F.4th 723, 729 (6th Cir. 2023). The Court should reverse class certification for this reason alone. *Id.*

The district court also made other errors, any one of which alone requires reversal, but together show no classes should have been or could be certified here. Had the district court conducted the rigorous analysis and "qualitative[] evaluat[ion]" required by Rule 23, *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 300 (6th Cir. 2023), it would have reached the inescapable conclusion that uncommon and individualized issues predominate. The district court instead ignored, deferred, or removed individualized issues from the certification equation altogether, often based on a mistaken distinction between "merits" and "class" issues. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013).

To start, plaintiffs' "two distinct" alleged shudder and shift-quality defects cover a broad spectrum of different issues that have different causes and occurrence rates—tied to things like vehicle make and model, geography or climate issues, and vehicle improvements over time that can mitigate (shift quality) or eliminate (shudder) the issues altogether. Even the minority of purchasers who may have had a transmission issue related to either alleged defect had their own individualized and unique experiences that depend on countless variables, including driving habits, consumer expectations, available repairs, and warranty coverage.

The district court did not assess the impact of the two-defect problem (and other uncommon experiences) on the certification inquiry. That this assessment was "all but absent" from the district court's opinion is precisely the type of "surface-level" approach this Court rejected as insufficient in another automobile class action case also involving two claimed defects. *In re Ford*, 86 F. 4th at 728. The district court also failed to resolve the impact of the different laws governing 59 claims across 26 state classes. Deferring these questions does not comport with Rule 23's required "precision across the board." *Id.* at 726. The failure to "forecast how the parties will conduct the litigation from the certification stage through the trial to the final judgment" also requires reversal. *Fox*, 67 F.4th at 302.

Next, the district court accepted damages models that by design obscure the many individual issues affecting vehicle prices, relying on averaged-based aggregates that do not distinguish between (among other things) class members whose vehicles have manifested the defect and those whose vehicles have not. Plaintiffs' expert admits his model awards damages to uninjured class members. These damages models are rooted in overpayment theories that assume every class member would have paid less had the alleged transmission defects been disclosed (regardless of whether a defect manifested in their actual vehicles). But real-world market data—along with the dozens of named plaintiffs who dropped out of this case only to re-sell their vehicles at premium prices—show that highly publicized

transmission-defect allegations did not reduce the price buyers are willing to pay for class vehicles.

Finally, some 40% of class members have arbitration agreements, which are not off-the-shelf agreements included in every purchase. Their existence and terms vary by each individual transaction. Evidence concerning who has arbitration agreements, whether they are enforceable and in what circumstances, and who decides that (arbitrator vs. the court) are uncommon. Rather than grapple with these individual issues and differing facts, the district court held GM had waived its arbitration rights at the pleadings stage against *all* proposed absent class members before certification even though, as a matter of law, absent class members *were neither parties* nor subject to the district court's jurisdiction yet. That error independently requires reversal.

*     *     *

In short, the district court's opinion cannot be squared with the last decade of class action jurisprudence in the Supreme Court and in this Court, including the recent *TransUnion* and *In re Ford* opinions. The district court "enabl[ed] enormous aggregation of claims and parties," by failing to undertake the "rigorous analysis" required before departing from the "constitutional tradition of individual litigation." *In re Ford*, 86 F.4th at 725-26. The certification order reflects a growing proliferation of certification orders that force automobile and other manufacturers to

5

decide between an exorbitant settlement (that primarily would "compensate" hundreds of thousands or millions of consumers with no injuries or damages) and the incalculable risk of a class trial. This appeal presents an opportunity to reset, to guide the application of recent class action precedent, and to stem the influx of these no-injury, no-manifested defect class actions.

The Court should reverse the certification opinion in its entirety and hold none of the claims may be certified here.

## STATEMENT OF JURISDICTION

Plaintiffs filed this action in the district court under 28 U.S.C. § 1332(d)(2)(A). This Court has jurisdiction under Rule 23(f) and 28 U.S.C. § 1292(e) because it granted GM's timely petition for permission to appeal. Case No. 23-0104, R.20-2.

## STATEMENT OF THE ISSUES

1. Did the district court violate Article III standing requirements and many state laws' "manifest defect" rules (requiring a defect to manifest in plaintiffs' own products) by certifying classes composed of masses of absent class members who never had any transmission problem?

2. Did the district court err by failing to conduct Rule 23's required rigorous analysis because it did not qualitatively evaluate, but instead ignored or deferred

resolution of, the predominant individualized issues until summary judgment or in some later undefined "culling" procedure?

3.    Did the district court err in allowing nationwide average-based damages calculations to show classwide injury and damages even where plaintiffs' own expert admits some class members have no damages at all, and where injury (if any) and damages for others will vary by individual purchase and repair history?

4.    Did the district court err by holding GM waived its right to arbitration for 40% of absent class members *before* class certification and *before* they were parties to the lawsuit?

## STATEMENT OF THE CASE

This case is about two different types of alleged transmission defects in dozens of different vehicle make/model/model-year combinations—ranging from 2015 Silverado heavy-duty pickup trucks to 2019 Corvette two-seater sports cars. These vehicles offer different experiences and are purchased by consumers with different expectations. The district court amalgamated these different vehicles and defects, along with the different experiences of 800,000+ purchasers, by certifying 59 claims under the laws of 26 states. But most consumers never had any transmission problem. Where there was an issue, it was often a fleeting, minor inconvenience, was fixed for free under warranty, and/or had nothing to do with the transmission.

**A.      The Record Shows Myriad Individualized And Uncommon Issues.**

Individualized facts and issues predominate in this case from start to finish.

**1.      Uncommon Defects.**

Plaintiffs identify "two distinct" alleged types of defects: (1) "shudder" caused by a "defective automatic transmission fluid" and (2) "harsh shifts" caused by a "poor transmission design." Certification Motion, R.222, PageID.15374; Transcript, R.272, PageID.20263-64. None of the named plaintiffs alleges they had an accident, collision, or personal injury related to either alleged defect. And the National Highway Traffic Safety Administration (NHTSA) has never initiated a safety defect investigation for either issue, notwithstanding plaintiffs' lawyers' public allegations and press releases, media coverage, and other sources. Lange Report, R.220-3, PageID.14468, 14473-74.

The 26 statewide class were certified based on claimed shudder or shift-quality defects. But plaintiffs argue the two alleged defects are distinct, and *not* "two manifestations of a common problem." Transcript, R.272, PageID.20263-64.

*Shudder* is a vibration feeling that can be caused by many things having nothing to do with transmissions (like tire imbalances). Plaintiffs allege the shudder defect is a torque converter clutch ("TCC") shudder. Goodrich Deposition, R.245-3, PageID.16996-98; Radecki Deposition, R.245-6, PageID.17024-27. TCC shudder is diagnosed by a qualified technician collecting test-drive data using a PicoScope

8

accelerometer. Kuhn Report, R.178-15, PageID.7893. TCC shudder can be caused by different things, including automatic transmission fluid (ATF) degradation. Lange Report, R.220-3, PageID.14512-16; Goodrich Deposition, R.245-3, PageID.17000-01.

In January 2017, GM introduced a new ATF, which improved performance but did not entirely resolve the issue for some class members. Goodrich Deposition, R.245-3, PageID.16991-94; Gonzales Deposition, R.245-5, PageID.17017. In March 2019, GM introduced a different ATF called "Mod1A" in new vehicles and for warranty repairs. Lange Report, R.220-3, PageID.14432-33, 14467-71. Plaintiffs agree Mod1A resolves any TCC shudder, excluding class vehicles manufactured after March 1, 2019, and reducing damages for anyone who received Mod1A under warranty. Certification Motion, R.222, PageID.15375, 15388-89.

*"Shift quality"* is an umbrella term for a variety of concerns that manifest in different forms and different circumstances, that have different root causes, and that customers perceive differently. PX149, R.204-16, PageID.11767-68, 11779-83. Each shift quality issue varies too, including: (i) *what* it is (described in terms like "hesitation," "lurch," lunge," and "jerk"); (ii) *when* it happens (some during acceleration, others when braking, some during a morning "cold start"); (iii) *how* consumers perceive it (*e.g.*, whether they notice or are bothered); and (iv) *whether* any transmission issue causes it (vs. engine conditions, speed, etc.). Complaint,

R.41, PageID.2251; Lange Report, R.220-3, PageID.14418, 14474-75, 14497-511, 14602; PX149, R.204-16, PageID.11234-5, 11246-50.

Throughout the class period, GM addressed various shift quality concerns with different continuous transmission improvements, including targeted hardware and software changes and service bulletins. Lange Report, R.220-3, PageID.14509; PX149, R.204-16 PageID.11794-98; GM000046337, R.245-8, PageID.17060-67. Shift-quality complaints substantially decreased in each successive model year. PX149, R.204-1, PageID.11794.

### 2.    Uncommon Consumer Experiences And Class Vehicles.

#### a.    Different Defect Manifestations.

Most class members have never reported any transmission complaints. Undisputed warranty data for model year (MY) 2015-2018 class vehicles show nearly 90% have never made a shift quality claim; nearly 70% never registered a shudder claim. Lange Report, R.220-3, PageID.14531-32. Even after combining two different defect types (despite being different issues with different causes), most of the class (more than 60%) never reported either issue. *Id.*

The rate of any complaints is also highly variable, depending significantly on (1) model (*e.g.*, Corvettes 4% (shift) or 22% (shudder) vs. Escalades 30% (shift) or 22% (shudder)) and (2) model year (*e.g.*, 36-month shift quality warranty rates rates dropped from 10.6% for 2015 Corvettes to 1% for the 2019 Corvette). *Id.*,

10

PageID.14531-33; Lange Appendix 6, R.245-16, PageID.17138-39. Geography matters too, but this also depends on the alleged defect: shudder occurs less frequently in low humidity states (*e.g.*, 2.5% in Colorado). Lange Report, R.220-3, PageID.14566-67; Wachs Report, R.182-1, PageID.8816.

b.    **Different Causes Of "Transmission" Issues.**

Each named plaintiff claimed they personally experienced transmission problems. But many "transmission" complaints turned out to be caused by *tires*, *not the transmission*. Sinclair Repair Order, R.245-19, PageID.17434; McQuade Repair Order, R.245-20, PageID.17436; Filiaggi Inspection Report, R.245-21, PageID.17439-42; Drain Inspection Report, R.245-22, PageID.17444; Kuhn Report, R.178-15, PageID.7898.

Moreover, plaintiffs' expert (Mark McVea) could not find transmission problems in many plaintiffs' vehicles—no shudder in 50% of vehicles (18 of 36), no shift issues in 5 vehicles, and neither issue in several vehicles, including those of plaintiffs Speerly, Ho, and Dykshorn. McVea Report, R.180-1, PageID.8399-400. This was the case even though during vehicle inspections he intentionally tried to induce transmission issues through atypical driving maneuvers intended to "confuse" the transmission. Kuhn Report, R.178-15, PageID.7901-02; McVea Deposition, R.178-12, PageID.7706-07. In other cases, what was thought to be "harsh shifting" was, according to plaintiffs' expert, an "adaptive shift/driving

11

mode" "generally 'to be expected from'" that vehicle. McVea Inspection Notes, R.178-16, PageID.7925; Kuhn, R.178-15, PageID.7892.

        c.    **Different Consumer Perceptions And Experiences.**

Perceptions of shudder or shift quality issues depend on each driver's subjective perspective and preferences. Lange Report, R.220-3, PageID.14417, 14602; Sierchio Deposition, R.245-23, PageID.17450. For example, one plaintiff testified he did not expect his Cadillac CT6 "to shift like a Silverado." Weeks Deposition, R.245-15, PageID.17126-27. But both Silverados and Cadillacs are lumped together in the same classes.

There is no common consumer description or understanding of "shudder" even among named plaintiffs. Some had no shudder issues, even if they believe they had a separate shift-quality problem. Ellard Deposition, R.245-31, PageID.17819-21. Those reporting shudder described different circumstances and experiences. W. Fredo Deposition, R.245-24, PageID.17456; Freeman Deposition, R.245-25, PageID.17463; Higgins Deposition, R.245-26, PageID.17474; Dykshorn Deposition, R.245-27, PageID.17483; Flowers Deposition, R.245-28, PageID.17489; Banks Deposition, R.245-13, PageID.17107. One plaintiff described it as vibrating less than an electric razor, explaining "somebody that doesn't drive the truck wouldn't feel it if they didn't know what they were looking for." Speerly Deposition, R.245-33, PageID.18442-43. Another testified he would not describe

his vehicle vibration as a shudder, because it is "[n]ot to any degree more significant than I think other vehicles vibrate." Eatherton Dep., R.245-59, PageID.19160.

The circumstances and type of shift-quality concerns are also highly individualized. *See* Clark Deposition, R.245-31, PageID.17659-60 ("slip" and "hesitating" sometimes together, other times separately); T. Coulson Deposition, R.245-31, PageID.17698-99 (occasional "clunk" accelerating after stoplight); Degrand Deposition, R.245-31, PageID.17725, 17727-28 (cold start issues if vehicle not driven for several days; harsh downshift during "panic stop"); Ellard Deposition, R.245-31, PageID.17818-19, 17823-24 (random harsh first-to-second gear upshift but not downshift); Shift Quality Testimony, R.245-31, PageID.17500-18428.

Ultimately, whether shudder or shift issues are even defects at all (as opposed to normal vehicle functioning) or are bothersome to (or are even noticed by) class members varies. Speerly Deposition, R.245-33, PageID18441 ("sensitive to noises" and "tend[s] to notice thing that many other people don't"); Lloyd Deposition, R.245-32, PageID.18434-35 (similar).

### d.    **Different Repairs And Warranty Coverage.**

Automobiles are consumer goods with a limited expected useful life. As vehicles age, some of their thousands of parts will wear or break, requiring repair or replacement. This common-sense reality is reflected by limited warranties, in which manufacturers agree to cover the costs of certain repairs for a period of time (*e.g.* 5

or 6 years), but not after. *E.g.* Warranty, R.245-60, PageID.19202. Some consumers even decide to purchase "extended warranties" from third parties, including to protect from "potential defects." Banks Deposition, R.245-52, PageID.18679. That some aging vehicle parts will need repairs or replacements, or malfunction after manufacturer warranties have expired, is part of the bargain as shown in the warranties themselves.

Between 2014 and 2020, GM released over 60 different free warranty repairs (called Technical Service Bulletins ("TSBs")) to address concerns related to shudder or shift quality. Lange Report, R.220-3, PageID.14604-05. GM issued 39 TSBs for shudder repair procedures ranging from a full torque converter replacement to a Mod1A fluid flush. *Id.*, PageID.14556-57. Around 24% of class vehicles received fluid flush repairs while around 4% received torque converter replacements. *Id.* GM issued 30 TSBs for shift issues, offering repairs ranging from replacement of the control valve body to reprogramming the engine control module and transmission control module (ECM/TCM). *Id.*, PageID.14605.

Multiple plaintiffs testified the Mod1A fluid flush resolved their shudder issues. *E.g.*, Higgins Deposition, R.245-31, PageID.17969 (vehicle "hasn't done the rumble strip routine since the second flush"); Ponder Deposition, R.245-31, PageID.18140 (he "never felt [the shudder] again" after "repair of the torque converted with the new transmission fluid"). Others reported their complaints had

14

been "significantly reduced" or that their vehicle "rarely exhibits" any issues after the fluid flush. McVea Appendix 1, R.180-1, PageID.8399-400.

Still other plaintiffs *refused* free repairs under warranties for various reasons. *E.g.*, Sicura Deposition, R.245-10, PageID.17080 ("What I said was, under the advice of counsel, to not let them make any repairs to the vehicle"); Ellard Deposition, R.245-11, PageID.17087-92 (declining free replacement transmission under warranty); Eatherton Deposition, R.245-12, PageID.17098-99 (declining Mod1A fluid flush); Banks Deposition, R.245-13, PageID.17109-10 (refusing repairs because "I was in the class action suit" and "wanted to preserve evidence" and testifying he would not want a repair that "permanently resolved [his] issues").

### e.     Different Vehicles And Transmission Calibrations.

The class vehicles include dozens of different vehicle/make/MY combinations spanning seven distinct market segments that were equipped with 8-speed transmission (8L45 and 8L90). Eichmann Report, R.179-2, PageID.8190-91, Iyengar Report, R.170-5, PageID.5599. The transmission performance among class vehicles differs because they are built on different platforms, contain different engines, and have unique vehicle-level transmission calibrations for each specific model/MY vehicle, which are tailored to each market segment's preferences (*e.g.*, sports car v. pickup trucks). Lange Report, R.220-3, PageID.14484-90.

f.   **Different Purchase Scenarios.**

Vehicle buyers care about different things and weigh vehicle attributes—*e.g.*, make/model, engine size, drivetrain, fuel economy, interior—differently.[1] Some consumers value transmission performance; others do not think about it even if they are aware of transmission issues.[2] One named plaintiff traded in one class vehicle (a 2017 Colorado) for another class vehicle (2019 Colorado) despite asserting the first vehicle "shook" so hard it "rattled your teeth."[3]

Buyers may choose the exact same vehicle but for different reasons. *Compare* Sierchio Deposition, R.245-23, PageID.17450 (purchased 2016 Camaro because he wanted a "bit more aggressive" "sports car" that did not "shift like a pickup truck") *with* Lloyd Deposition, R.245-32, PageID.18435; R.245-52, PageID.18774-75 (purchased 2016 Camaro because of "visual design," "horsepower" and 2016 Motor Trend Car of the Year Award). And specific colors or other options or trims can influence some consumers' vehicle selection and price. *E.g.*, Lloyd Deposition, R.245-32, PageID.18774-79 (color and interior); Sicura Deposition, R.245-52,

---

[1] Hitt Report, R.245-37, PageID.18473-75; Iyengar Report, R.170-5, PageID.5584-85; Iyengar Schedule 1, R.245-38, PageID.18487; Eichmann Deposition, R.245-39, PageID.18518-20.

[2] Hitt Report, R.245-37, PageID.18479-81; T. Coulson Deposition, R.245-40, PageID.18536-37; K. Coulson Deposition, R.245-41, PageID.18545.

[3] Filiaggi Deposition, R.245-31, PageID.17858; Filiaggi Purchase Invoice, R. 245-49, PageID.18666; Filiaggi Deposition, R.225-10, PageID.15977-78.

PageID.18816-17 ("red paint," upgraded interior, and Z51 options package); Weeks Deposition, R.245-52, PageID.18848-49 ("absolutely incredible" sound system).

Additionally, while new vehicles have a manufacturer suggested retail price (MSRP), actual purchase prices differ significantly because of a multitude of individual factors, including purchaser-dealer negotiations, trade-ins, options, customer preferences, dealership-specific offers, and others. Hitt Report, R.245-37, PageID.18474-75, -78, -82; Eichmann Deposition, R.245-39, PageID.18513, 18520.

For example, price negotiations depend on variables among both buyers and sellers. Some class members and sellers spent hours or days just negotiating price. Weeks Deposition, R.245-52, PageID.18852-53; Butscha Deposition, R.245-52, PageID.18699; Degrand Deposition, R.245-52, PageID.18715; Dykshorn Deposition, R.245-52, PageID.18731; Ellard Deposition, R.245-52, PageID.18749. Some did not negotiate price at all for various reasons. Brack Deposition, R.245-52, PageID.18688-89 (foregoing negotiation and an $11,000 rebate due to a manic episode); Carroll Deposition, R.245-52, PageID.18705 (thought it was "the lowest price that [the dealer] could do"); Eatherton Deposition, R.245-52, PageID.18736-38 (dealer used "hassle-free pricing" "slightly lower" than other dealers); Flowers Deposition, R.245-52, PageID.18753 ("I'm not familiar with the procedures of purchasing automobiles. So I don't negotiate. I don't know why.").

These and other differing transaction scenarios are just some of the many

uncommon facts which result in markedly different purchase prices paid by consumers (including named plaintiffs) for the same vehicle. For instance, three different plaintiffs paid $37,400, $49,299, and $45,526 for the same make and model 2017 GMC Sierra SLT truck. Hitt Report Ex. 7, R.245-51, PageID.18670-71.

**B.    Plaintiffs' Experts Offer Opinions And Models That Obscure Individual Issues And Pay Damages To Uninjured Consumers**

Faced with countless individualized issues, plaintiffs offered expert opinions from Dr. Alice Wachs (a statistician) and Richard Eichmann (an economist) who used predictive statistics and modeled overpayment damages.

**1.    Dr. Wachs Predicts Future "Failure" Rates Based On An Admittedly Incorrect Assumption Of A Single Defect.**

Dr. Wachs predicts future warranty claim rates in class vehicles will range from 61-100% within 10 years, aggregated in each of the seven market segments. Certification Motion, R.222, PageID.15378; Wachs Report, R.182-1, PageID.8784-85, 8796. But Dr. Wachs assumes "that both shudder and harsh shift are symptoms" of a *single* defect even though she counts shudder and shift quality as two claims if in the same vehicle. Wachs Report, R.182-1, PageID.8793; Wachs Deposition, R.182-2, PageID.8862, 8877.

Plaintiffs relied on this "unitary common flaw" assumption to defeat GM's motion to exclude Dr. Wach's opinions, *Won v. Gen. Motors, LLC*, 2022 WL 3010886, at *12-13 (E.D. Mich. July 28, 2022), but then abandoned it at the

18

certification hearing three weeks later, where they pivoted to arguing there are "two distinct defects." Transcript, R.272, PageID.20263. *See also* Ray Report, R.175-10, PageID.6431-36 (explaining that "patterns in the data" do not justify combinations); PageID.6446-48 (discussing "variation of claim percentages").

### 2. Eichmann's Average-Based Aggregate Damages Admittedly Would Compensate Uninjured Class Members.

Eichmann calculates more than a billion dollars in classwide damages under three models: (1) point-of-sale overpayment, (2) cost of repair; and (3) diminished resale value (hedonic regression). Eichmann Report, R.179-2, PageID.8190-211. He does not calculate actual damages for any named plaintiff or "any particular class member"—just an "average…effect to the class." Eichmann Deposition, R.245-39, PageID.18514-15. He admits actual damages differ across and within the class vehicle populations and *could even be zero*. *Id.*; Eichmann Report, R.179-2, PageID.8190-211; Eichmann Schedules, R.206-2, PageID.12292-93, 12307. For example, he admits an owner whose free warranty repairs resolved shudder and shift quality issues "would not suffer any economic harm" under his cost-of-repair model. Eichmann Deposition, R.245-39, PageID.18522. Nor can his models explain the many named plaintiffs who dropped their claims—electing instead to sell their vehicles at premium prices in the used car market. *See e.g.*, R.245-53, PageID.18880, 18886 (Florida class member Duffy traded in vehicle with 120,000 miles for $25,000); Orders, R.87, PageID.4149-50; R.103, PageID.4439-40; R.119,

PageID.4420-21; R.155, PageID.5390-91; R.234, PageID.16759; *see also e.g.,* R.245-53, PageID.18880-86.

But the district court certified the classes after accepting plaintiffs' counsel claim that damages can be determined for all class members using one of Eichmann's damages models "without having to do any further inquiry"—even though Eichmann admits this would mean compensating consumers with no economic injury at all. Transcript, R.272, PageID.20267-68, 20298.

### C. The District Court Ignores Or Defers Resolution Of Predominance Issues, Finds GM Waived Arbitration Rights Against Those Who Were Not Parties To The Case, And Certifies 26 Statewide Classes.

The district court certified every claim in every state for which plaintiffs sought certification. *Speerly v. Gen. Motors LLC*, 343 F.R.D. 493, 526-30 (E.D. Mich. 2023). It did so by finding that individual issues of standing, defect manifestation, and damages (among others) were merits (not class) issues to resolve later through summary judgment or a process by which it would "identify and cull" all class members "who never had any problems with their vehicles or never sought repairs." *Id.* at 523-26. The district court did not further define this culling procedure, explain how it would work, who would be the fact finder, or when it would occur.

Finally, although the district court acknowledged "an unidentified but substantial minority of absent class members" may be subject to arbitration agreements, it held GM had "waived any right to compel arbitration." *Id.*at 524. It

thus never evaluated the impact of arbitration agreements on its Rule 23 analysis.

## SUMMARY OF THE ARGUMENT

**I.** The certification order violates Article III, which requires "[e]very class member" to have "standing in order to recover individual damages," *TransUnion*, 594 U.S. at 431, as well as the substantive law of at least twelve states that bar economic loss claims where a defect did not manifest in an individual plaintiff's own product. It is undisputed that hundreds of thousands of absent class members have not reported any transmission problem. Identifying the class members who experienced what they believed to be transmission issues and whether they were actually caused by the alleged defects would require significant, factually intensive individualized inquiries. Plaintiffs nonetheless claim injury-in-fact and actual damages under an overpayment theory that would compensate class members for a risk of future problems. The Supreme Court rejected this end-run around Article III's concrete injury-in-fact requirement. *Id.* at 437. The district court's suggestion that an unspecified post-certification procedure could "cull" the majority of class members who have not experienced any defect is not a solution, but instead underscores the predominance problem here.

**II.** The district court's commonality and predominance analysis also reflects multiple errors. The analysis is "infected" with a "surface-level approach" to plaintiffs' "two distinct theories of design defect." *In re Ford*, 86 F.4th at 728. The

district court did not rigorously analyze plaintiffs' claims on a defect-by-defect basis, nor rigorously analyze whether GM's countervailing evidence "made a difference as to each of plaintiffs' theories." *Id.* The certification opinion references only plaintiffs' briefed plaintiff-specific facts (and none of GM's), and also cites plaintiffs' experts over 50 times on defect-related issues, but it includes only a single reference to any GM expert.

The district court also mistakenly focused on common questions without rigorously analyzing the uncommon proof, uncommon answers, and uncommon state-law requirements pervading this case. Proof of the existence and cause of a defect, as well as efforts to obtain (and the adequacy of) repairs of either of the two separate defect types is uncommon, individualized, and evolved throughout the class period. As is evidence of reliance and causation, which in many states must be proven on an individualized basis. Whether class members recouped any alleged damage by reselling their vehicle (including at premium prices) is yet another individual and uncommon issue the district court did not address.

**III.** The district court's reliance on plaintiffs' experts to mask these uncommon issues and show that all class members overpaid for their vehicles because risks of transmission problems were not disclosed was also error. Plaintiffs' experts' damages models are based on the single-defect theory of liability that plaintiffs have since abandoned; they thus are not "consistent with [plaintiffs']

22

liability case" as required under *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). And using average-based and aggregate damages model would admittedly (and impermissibly) compensate even those with no damages and no injury, while also abridging GM's due process rights to defend against individual claims. *See, e.g.*, *Johannessohn*, 9 F.4th at 986.

**IV.** Approximately 40% or more of absent class members have arbitration agreements. The existence of these agreements, their terms, and GM's rights to seek to enforce them under state law are not subject to common proof and cannot be resolved on a classwide basis. Different class members signed different agreements often with transaction-specific terms. But the district court failed to consider this argument at all because it held GM had "waived any right to compel arbitration" before any class was certified "by engaging in this litigation and seeking dispositive rulings from the Court on plaintiffs' claims." *Speerly*, 343 F.R.D. at 524. But absent class members were not parties, and GM thus could neither waive nor enforce its arbitration rights against them before certification. The fact the arbitration terms—and the circumstances in which each class member agreed to those terms—varies across the class should have been an important and likely dispositive part of the predominance analysis. The district court erred by not considering it at all.

## STANDARD OF REVIEW

The Court reviews questions of Article III standing *de novo*, *Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008), and gives "fresh review to any legal interpretations" of Rule 23 and "abuse-of-discretion review to the district court's ultimate judgment whether to certify a class." *Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022). A district court's rigorous analysis must resolve merits questions to the extent they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 568 U.S. at 465; *accord Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). The duty to "actually decide" questions of fact or law relevant to certification "is a crucial part of avoiding the procedural unfairness to which class actions are uniquely susceptible." *In re Ford Motor*, 86 F.4th at 729 (quoting *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)). Failure to "weigh [defendant's] evidence" is an abuse of discretion. *Id.* at 728-29.

## ARGUMENT

## I.   THE DISTRICT COURT ERRED BY CERTIFYING CLASSES COMPOSED OF COUNTLESS MEMBERS WHO NEVER HAD A TRANSMISSION DEFECT MANIFEST IN THEIR OWN VEHICLES.

The district court erred by certifying classes based on two alleged transmission defects even though most class members have never had any transmission problems in their own vehicles—let alone problems caused by a common classwide defect. Lange Report, R.220-3, PageID.14531-34. At most, some

class members may be able to show some problem, but "[s]ome class members cannot." *Johannessohn*, 9 F.4th at 988. This presents a threshold problem under Article III, many state laws, and is a fundamental bar to certification here.

### A.    The Order Violated Article III Standing Requirements.

"Every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. at 431; *see also Johannessohn*, 9 F.4th at 987 ("[A] class cannot be certified if it contains members who lack standing.").

This Court has not yet squarely addressed whether each class member must experience manifestation of a defect to establish an Article III injury-in-fact.[4] But other courts held even before *TransUnion* that it is "well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009). That is, it "is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect." *Id.*; *see also In re Polaris Mktg., Sales Pracs., & Prods. Liab. Litig.*,

---

[4] This Court's unpublished statement that "paying more" for a product because of a misrepresentation "establishes a cognizable injury," *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 581 (6th Cir. 2013), predates *TransUnion*.

9 F.4th793, 797 (8th Cir. 2021) (claiming a defect "*can* cause" damage is insufficient).

Plaintiffs cannot satisfy Article III with a benefit-of-the-bargain theory that allows "purchasers without manifest defects…to piggyback on the injury caused to those with manifest defect." *Johannessohn*, 9 F.4th at 988 (rejecting standing based on "inflated purchase price" "economic injury"). Purchasers of a product that "has not exhibited the alleged defect" have "necessarily received the benefit of their bargain" and lack "injury in fact." *Id.*; *see also In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (holding purchaser lacked standing where product provided bargained-for benefits).

A class "cannot be certified" here because no class has "been defined in such a way that anyone within it would have standing." *Johannessohn*, 9 F.4th at 987. This conclusion is mandated by *TransUnion*, which "marked a shift in the [Supreme] Court's standing jurisprudence." *Dinerstein v. Google, LLC*, 73 F.4th 502, 516 (7th Cir. 2023). *TransUnion* involved a credit agency's inaccurate identification of 8,200 individuals as potential terrorists in their credit files. The agency actually disseminated the incorrect information to potential creditors of only 25% of class members. 594 U.S. at 419-20. In assessing standing, the Court drew a bright line between that minority of class members who had suffered a "concrete injury in fact under Article III," and the other 75% who had only been exposed to the

unmaterialized "risk of future harm." *Id.* at 433. In holding the "mere risk of future harm," "cannot qualify as a concrete harm," the Court agreed "time will eventually reveal whether the risk materializes in the form of actual harm;" it is that "harm itself, and not the pre-existing risk [that] will constitute a basis for the person's injury and for damages." *Id.* at 436.

The certification order here is irreconcilable with *TransUnion*. The purchase of a vehicle with alleged defects posing a potential future risk of a problem is not a concrete injury-in-fact for every purchaser. Unless and until the risk materializes, the purchaser received what they bargained for, regardless of alleged misrepresentations or omissions. *See Johannessohn*, 9 F.4th at 988.

Moreover, if an alleged defect manifests within the 5- or 6-year warranty period, many consumers could receive a free repair, consistent with their benefit of the bargain. Equally important, vehicle warranties do not last forever. Thus, enforcing Article III requirements is particularly important in the automotive context because cars have both limited warranties and a limited useful life. Cars have many thousands of parts, any one of which can malfunction, especially as they age. Under the bargain between a manufacturer and a consumer, the manufacturer will pay for a fix if a covered defect manifests during the warranty period, but not *after* the warranty has expired. Certifying a class based on this overpayment-at-purchase theory transforms a "limited" warranty into a "forever" warranty. But this is not an

27

injury-in-fact, nor one that could be "fairly traceable" to GM's alleged conduct *and* that would be "redresse[d]" by plaintiffs' proposed remedy. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 796 (2021).

In short, plaintiffs' overpayment theory improperly seeks to transform an unmaterialized risk of some potential defect manifestation into a classwide point-of-sale economic injury, creating a never-ending warranty. But "[s]tanding is not dispensed in gross;" instead, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief they seek." *TransUnion*, 594 U.S. at 431. "[A] plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) (citing *TransUnion*). "No concrete harm, no standing." *TransUnion*, 594 U.S. at 442.

The Court should reverse the certification order in its entirety.

**B.    The District Court Erred By Certifying Classes Under State Laws Requiring That A Defect Manifest In Plaintiff's Own Product.**

Certifying classes including those with unmaterialized injury also violates the laws of states that follow the "manifest defect" rule, which bars economic claims where an alleged defect has not actually manifested in the plaintiff's own product.

Defect manifestation is required for certain certified claims under at least 12

states laws, including: Alabama DTPA; Arkansas DTPA;[5] Delaware CFA; Florida DUTPA; all Illinois claims; all Maine claims; all Minnesota claims; all New Jersey claims; all New York claims; Oklahoma claims; South Carolina breach of implied warranty; all Texas claims; and Wisconsin DTPA.[6]

In those states that follow the manifest defect rule, whether a class member has experienced a shudder and/or a harsh shift in their vehicle is an inherently individualized substantive issue "that will control the outcome" of their case. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017). Because defect manifestation cannot be established with the "same

---

[5] Arkansas law changed during the class period. Before August 1, 2017, an ADPTA claim required defect manifestation. *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005); Ark. Code Ann. § 4-88-102.

[6] *Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *14 (E.D. Mich. Apr. 8, 2022) (Alabama DTPA, Florida DUTPA, and Texas DTPA); *O'Neil*, 574 F.3d at 505 (Minnesota CFA, implied warranty, and express warranty claims); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 649 (E.D. Mich. 2019) (NJCFA); *Siqueiros v. Gen. Motors LLC*, 2021 WL 2115400, at *5 (N.D. Cal. May 25, 2021) (Arkansas DTPA); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429, 451 (S.D.N.Y. 2017) (New York law and Texas DTPA); *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 298 (4th Cir. 1989) (South Carolina implied warranty); *Dalton v. Ford Motor Co.*, 2002 WL 338081, at *6 (Del. Super. Ct. Feb. 28, 2002); *Berry v. City of Chicago*, 181 N.E. 3d 679 (Ill. 2020); *Poulin v. Thomas Agency*, 746 F. Supp. 2d 200, 206 (D. Me. 2010); *Mazerolle v. DaimlerChrysler Corp.*, 2002 WL 31367215, at *3 (Me. Super. Sept. 20, 2002); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *36 (S.D.N.Y. July 15, 2016) (Oklahoma); *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1209 (W.D. Okla. 2015); *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 12 (N.Y. App. Div. 2002); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004).

evidence . . . for each member," the manifest defect rule precludes certification. *Id.*(quotation and citation omitted); *see also Weidman*, 2022 WL 1071289, at \*14 (denying Rule 23(b)(3) certification under Alabama DTPA, Florida DUTPA, and Texas DTPA), *vacated on other grounds sub. nom In re Ford*, 86 F.4th 723; *Sonneveldt v. Mazda Motor of Am., Inc.*, 2023 WL 1812157, at \*5 (C.D. Cal. Jan. 25, 2023) (decertifying Texas DTPA class); *Siqueiros v. Gen. Motors LLC,* 2021 WL 4061708, at \*6-7 (N.D. Cal. Sept. 7, 2021) (decertifying Texas warranty class); *In re Canon Cameras*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006) (denying certification of NYGBL § 349 class).

The district court cited *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 855 (6th Cir. 2013), and *Wolin v. Jaguar Land Rover North Am.*, 617 F.3d 1168 (9th Cir. 2010), to find the manifest defect rule does not preclude certification. But *Whirlpool* affirmed certification under *Ohio* law, which is not at issue here. 722 F.3d at 857. And *Wolin* was decided before the Supreme Court decisions in *Wal-Mart* and *Amgen* (and their progeny) made clear that merits questions should be considered at certification if "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 568 U.S. at 466 (2013); *accord Wal-Mart,* 564 U.S. at 351.

The Court should reverse certification of claims requiring a manifested defect.

### C.    The Manifest Defect Problem Highlights The Incurable Predominance Issues That The District Court Failed To Address.

The manifest defect problem also exposes a raft of individualized issues, including which class members had a transmission problem, whether such problems were caused by any transmission defect (and if so which one), and whether state laws require manifestation to recover under the claims advanced here.

*First*, it is not enough to count on a later unspecified plan to exclude or award no damages to those who have not experienced either alleged defect. Identifying who did or did not have a transmission problem at all (let alone one traceable to either alleged defect, as required by Article III) would require tens or hundreds of thousands of mini-trials for individual vehicle owners. *See Tarrify*, 37 F.4th at 1106 (affirming certification denial where "identification of proposed members of the class...haunts every consideration").

As explained above, there are many potential causes for what consumers may perceive or report as transmission-related issues. Determining whether these "transmission" problems are related to alleged shudder or shift-quality defects (or any transmission issue at all) requires professional testing—as evidenced by the findings of plaintiffs' own expert who could not diagnose shudder and/or shift-quality issues in many of the named plaintiffs' own vehicles. *See* Statement of the Case § A.2.b; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3d Cir. 2012) (reversing certification where "individual examination" of tires was needed because

31

"[e]ven 'defective' tires can go flat for reasons completely unrelated to their defects").

For example, one plaintiff's shudder complaint was caused by imbalanced tires, *not a transmission issue*. Sinclair Repair Order, R.245-19, PageID.17434. Another plaintiff's "banging noise" was "due to driving with newer tires in the front and bald tires in the rear," *not his transmission*. McQuade Repair Order, R.245-20, PageID.17436. And even plaintiffs' expert found it "[d]ifficult to deduce" whether what plaintiff Speerly described as shudder was caused by "tire balance or shudder." McVea Report, R.180-1, PageID.8399.

*Second*, the district court suggested manifestation was not a concern because (1) every named plaintiff testified their vehicle had experienced "one or both alleged defects" and (2) "the defect…can be expected to afflict every class vehicle sold within its useful lifetime." *Speerly*, 343 F.R.D. at 522. But the former is irrelevant to whether every absent class member can establish injury in fact. The latter is based on Dr. Wachs' future warranty complaint predictions which hinge on plaintiffs' now-abandoned one-common-defect theory. *See* Statement of the Case § B.1. Plaintiffs' liability theory (the one certified by the district court) turned on the existence of *two* distinct defects causing *two* different sets of symptoms.

*Finally*, the district court erred by not resolving the issue of defect manifestation law on a state-by-state basis or analyzing the impact of that law on

Rule 23(b)(3)'s predominance requirement. *Brown*, 817 F.3d at 1238 (reversing where district court did not resolve "questions of state law" that "bear on predominance"); *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1307 (11th Cir. 2023) (reversing certification where district court failed to rigorously analyze Texas law).

Simply put, the defect-manifestation issues here, whether viewed as an Article III or a state-law problem, preclude class certification. There are too many individualized issues across too many class members, and they vastly outnumber the common ones and will dominate any class proceedings.

## II. THE DISTRICT COURT ERRED BY CERTIFYING CLASSES WHERE INDIVIDUAL ISSUES PREDOMINATE.

"What matters to class certification…is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350. The text of Rule 23(b)(3) "requires a court to add up all the suit's common issues (those that the court can resolve in a yes-or-no fashion for the class) and all of its individual issues (those that the court must resolve on an individual-by-individual basis). A court must then qualitatively evaluate which side 'predominates' over the other." *Fox*, 67 F.4th at 300 (internal citation omitted).

The district court did not perform this required rigorous analysis. Instead, it assumed away or left for another day the most difficult predominance problems. The

district court dismissed key questions about "individualized reliance" and "individualized…causation" as "ancillary issues," concluding without any real analysis that the common issues it identified would predominate. *Speerly*, 343 F.R.D. at 508-09. It also concluded that certification was appropriate because it could resolve what it determined were "common questions" about merchantability, GM's knowledge, and materiality, which it predicted "will feature prominently in the disposition of this case." *Id.* at 508. But the district court did not certify a Rule 23(c)(4) issues class, nor could it have under *Ford*. Even if certification could resolve some common issues, that is not enough under Rule 23 where many important, factually complex individualized issues would remain unresolved. *Sandusky*, 863 F.3d at 468.

### A.   The Certification Opinion Did Not Meaningfully Address Or Analyze The Impact Of Two Distinct Alleged Defects.

Plaintiffs claim that "shudder" and "shift quality" are "two distinct defects." Transcript, R.272, PageID.20263. But the certification opinion does not address whether the distinct defects "made a difference as to each of plaintiffs' theories." *In re Ford*, 86 F.4th at 728. Instead, the district court lumped the defects together as a "duo of common defects." *Speerly*, 343 F.R.D. at 504; *id.* at 522 ("one or both alleged *defects*"). As this Court recently held in *Ford*, where analysis of the impact of distinct defect theories was "all but absent," the certification decision cannot stand. 86 F.4th at 728. Without addressing plaintiffs' "two distinct theories of design

defect,"—which implicate different causes, manifestation rates, remedies, and knowledge across the class period—the opinion cannot satisfy the heightened predominance showing required for a Rule 23(b)(3) class. *See Sandusky*, 863 F.3d at 468.

*First*, as in *Ford*, the district court's "surface-level approach" to the distinct defects left unresolved the variability and individualized issues related to GM's "knowledge of any defect and the materiality of that defect." *In re Ford*, 86 F.4th at 728. Further, also as in *Ford*, the district court did not analyze whether continuous improvements over time or "design changes affected [transmission] performance to a degree that would have made a difference to a consumer—that is, that the materiality of any defect lessened" in later model years, or whether it affected the amount of damages appropriate under an "overpayment" theory or otherwise. *Id.* Compounding these issues, the opinion references only plaintiffs' briefed plaintiff-specific facts and includes only a single reference to any GM expert.

*Second*, the problem is exacerbated here because, as plaintiffs agree, GM's free, in-warranty Mod1A transmission fluid change eliminated the alleged shudder defect. Lange Report, R.220-3, PageID.14432-33, 14569-72; Certification Motion, R.222, PageID.15389. But the district court's opinion does not "grapple with whether" this fix "made any material difference to the class's alleged defect" or damages. *In re Ford*, 86 F.4th at 728. Nor does it grapple with the dozens of GM

TSBs throughout the class period recommending repairs that remedied some, but not all, class members' transmission issues. Eichmann Report, R.179-2, PageID.8189 (estimating that among all vehicles with transmission repairs, only 35.1% returned for second repairs, and fewer than 5% returned for a third).

*Third*, the failure to address the two distinct alleged defects infects multiple aspects of the case. For example, plaintiffs' counsel told Dr. Wachs (who predicted future claims rates) to assume (erroneously) that shudder and shift quality complaints were symptoms of a *single* defect. Wachs Report, R.182-1, PageID.8793 ("I understand from counsel that both shudder and harsh shift are symptoms of the same faulty friction system"). But this is not plaintiffs' defect theory. Because the district court relied on Dr. Wachs to find common issues supporting certification, this fundamental error cannot be brushed away as a merits issue or one "going to weight." The district court erred by not addressing this foundational issue. *See Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 976 (M.D. Tenn. 2002) ("Like a house of cards, once those foundations are disproved, the whole analysis collapses."), *aff'd*, 89 F. App'x 927 (6th Cir. 2003).

### B. The District Court Did Not Meaningfully Address Or Analyze Uncommon And Individualized Evidence Regarding The Existence Or Perception Of The Alleged Defects.

This Court and others have rejected certification where, as here, proof of plaintiffs' claims "will differ depending upon the model and the year," the subjective

experience of each class member, and whether that experience is proximately caused by an alleged design defect. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (no predominance where various models had design or manufacturing changes); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002) (holding a "once-and-for-all decision about whether all 60 million tires were defective" was "not possible" where plaintiffs claimed three defects in 67 tire models); *Robinson v. Gen. Elec. Co.*, 2016 WL 1464983, at \*6-7 (E.D. Mich. Apr. 14, 2016) (holding plaintiffs "glosse[d] over the fact that each model is made up of numerous component parts, the design of which is not uniform across the different models").

Whether class members notice, report, or care about either symptom that could be caused by the alleged "shudder" and "shift quality" defects rests on subjective perceptions and experiences. The named plaintiffs confirm this, including one who testified his vehicle vibration is "[n]ot to any degree more significant than I think other vehicles vibrate." Eatherton Dep., R.245-59, PageID.19160. Whether other class members would claim that same level of vibration to be a shudder defect requires individual fact inquiries and individual proof.

Layered onto plaintiffs' subjective defect theories are 44 vehicle combinations with different types of vehicles (small sports cars to large trucks) built on different vehicle platforms, each with an 8-speed transmission that changed over the years

37

with different hardware, software, and calibrations for each vehicle type and MY. These transmissions are built and perform differently, as the starkly different warranty rates confirm. *See Beatty v. Ford Motor Co.*, 2021 WL 3109661, at *11 (W.D. Wash. July 8, 2021) (denying certification where, as here, design differences in component resulted in "statistically significant variations among the" warranty claim rates across class vehicles). Again, inspections of the named plaintiffs' vehicles undercut any common classwide defect. Plaintiffs' expert could identify a shudder issue in only half the vehicles, and GM's expert found no transmission issues in nearly two-thirds of them. Kuhn Report, R.178-15, PageID.7882.

In short, the district court's conclusion that "the problematic elements of the 8L design are universal and inherent despite any such variations," *Speerly*, 343 F.R.D. at 525, "does not a rigorous analysis make," particularly where, as here, "the class alleged two distinct theories of design defect." *In re Ford*, 86 F.4th at 728. The record evidence shows the exact opposite, and the certification order should be reversed. *Id.* at 727 (existence of defect is "only 'common' if the same malfunction could have corrupted the brake cylinders of all the relevant F-150 model years"); *see also Neale v. Volvo Cars of N. Am., LLC*, 2021 WL 3013009, at *10 (D.N.J. July 15, 2021); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 449, 451 (E.D. Pa. 2000); *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 194 F.R.D. 484, 490 (D.N.J. 2000).

**C.    The District Court Erred By Failing To Address Other Substantive Variations In State Law, Including Individualized Evidentiary Requirements.**

The district court summarily drew distinctions between class and merits issues on essential elements of many class claims. *Speerly*, 343 F.R.D. at 525. But the Supreme Court rejected this approach to class certification more than a decade ago in *Wal-Mart*, emphasizing that a court must consider a party's "merits contention" where it is the "crux of the inquiry." 564 U.S. at 351. The district court erred by failing to address these core merits issues that are "crux of the inquiry" and show the claims cannot be proven on a classwide basis. *Id.*

**1.    Express Warranty Claims Require Individualized Evidence Of Both Present And Inadequate Repair.**

The district court certified express warranty claims under the laws of 17 states, holding common questions of whether a class member sought repair under the terms of GM's limited written warranty and whether GM failed to adequately repair the vehicle after reasonable attempts were "merits issues that are irrelevant at this stage." *Speerly*, 343 F.R.D. at 525. This is wrong. If a class member did not seek or give GM an opportunity to repair, GM cannot be liable on an express warranty theory. *See, e.g.*, *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020) (applying Colorado law) ("Winnebago did not breach the warranty" because the plaintiffs did not give it an "opportunity to perform repair."); *BAE Sys. Info. & Elecs. Sys. Integration, Inc. v. SpaceKey Components, Inc.*, 752 F.3d 72, 78 (1st Cir. 2014)

(applying New Hampshire law) (affirming summary judgment where plaintiff did not "invoke any of the limited remedies, and . . . gave [defendant] no opportunity to make good on same.").[7]

The district court nods to this issue by suggesting it might later "cull" class members who "never sought repairs." *Speerly*, 343 F.R.D. at 523. But a future "cull[ing]" process does not cure the Rule 23(b)(3) predominance problem here. The district court vaguely suggests this would involve some analysis of "sales, registration, and warranty service data." *Id.* But that data itself encompasses countless variables, and it would not eliminate the host of individualized issues, including whether a claim was related to an alleged defect (as opposed to some other transmission issue or alternative cause of shudder/shift issues), and the adequacy and reasonableness of repair efforts. In short, culling the class would necessitate countless individualized inquiries and different evidence—none of which the district court considered or addressed before finding common issues predominated here.

Moreover, a passing reference to a future culling procedure does not "forecast how the parties will conduct the litigation from the certification stage through the

---

[7] *See also, e.g.*, *Harman v. Taurus Int'l Mfg., Inc.*, 661 F. Supp. 3d 1123, 1128 (M.D. Ala. 2023); *Snyder v. Komfort Corp.*, 2008 WL 2952300, at *4 (N.D. Ill. July 30, 2008); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 827 (D. Minn. 2010); *Hole v. Gen. Motors Corp.*, 442 N.Y.S. 2d 638, 640 (N.Y. App. Div. 1981); *Draffin v. Chrysler Motors Corp.*, 166 S.E.2d 305, 308 (S.C. 1969).

trial to the final judgment." *Fox*, 67 F.4th at 302. It also ignores other related individual factual determinations necessary to determine liability such as repair efforts. *See, e.g.*, *Becker v. Cont'l Motors, Inc.*, 709 Fed. App'x 263, 266-67 (5th Cir. 2017) (Texas law) (holding plaintiffs "must show not only that the product was presented to the defendant for repair but also that the defendant failed or refused to repair the defect); *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1360 (N.D. Ga. 2005) ("It is the *refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy which would constitute a breach of warranty.").

This question turns on individual answers and uncommon facts as to the specific circumstances of each class member. For example, if GM attempted a repair (*e.g.*, replacing the torque converter or flushing the transmission fluid) and the class member believed the repair was inadequate, their claim fails absent proof they voiced their dissatisfaction and provided GM an additional reasonable repair opportunity. *See Simpson v. Hyundai Motor Am., Inc.*, 603 S.E.2d 723, 727 (Ga. Ct. App. 2004) (affirming summary judgment where plaintiffs received repairs but "did not return to an authorized dealer for the purpose of allowing a final attempt to repair"); *Myrtle v. Gen. Motors Corp.*, 106 A.D.2d 883 (N.Y. Sup. Ct. App. Div. 1984) (similar).[8]

---

[8] Because warranty repairs could resolve many issues (as plaintiffs admit Mod1A did for shudder claims), treating these claims together would result in breach of

Owners also may refuse repairs as multiple named plaintiffs did. One plaintiff instructed his dealership that "they were not under any circumstances to perform any repairs to the transmission" *because it might affect his interest in this lawsuit*. Banks Deposition, R.245-13, PageID.17109. Another plaintiff also refused a recommended warranty repair. Ellard Deposition, R.245-11, PageID.17087-92.

These two liability questions of presentment and repair cannot be answered on a classwide basis with common evidence, rendering certification improper. *See, e.g.*, *Neale,* 2021 WL 3013009, at *18 (denying certification of express warranty class because "each class member must still separately prove that they discovered the Sunroof Defect during the warranty period, that they requested repairs related to the Sunroof Defect, and that Defendants denied such repairs"); *Sanchez-Knutson v. Ford Motor Co.*, 2016 WL 11783302, at *4 (S.D. Fla. July 25, 2016) (decertifying Florida express warranty class); *Galitski v. Samsung Telecomc'ns Am., LLC*, 2015 WL 5319802, at *9 (N.D. Tex. Sept. 11, 2015) (denying certification of Texas express warranty claim).

This Court's prior decisions in *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006), and *In re Whirlpool*, 722 F.3d at 859, do not support deferring these questions until some later post-certification proceeding. Plaintiffs' express warranty

---

warranty claims even for those whose warranty was satisfied (and not breached) by a free and effective repair.

claims here are not "sufficiently cohesive to warrant adjudication by representation." *Amgen*, 568 U.S. at 469. That is, the "crux of the inquiry"—whether the class member sought to enforce their vehicle's limited written warranty and GM failed to live up to it—is not susceptible to common proof and will not "produce a common answer." *Wal-Mart*, 564 U.S. at 352. These "fatal dissimilarit[ies] among the members of the certified class" render class treatment of these claims both "unfair" and "inefficient." *In re Whirlpool*, 722 F.3d at 859 (quoting *Amgen*, 568 U.S. at 470).

The express warranty claims should be decertified.

### 2.    The District Court Overlooked State Law Variations In Class-Defeating Elements Of Reliance And Causation.

The district court held that certification was appropriate because "proof of individualized reliance on alleged misstatements or omissions" is either "not required or will not predominate over the common issues in each state." *Speerly*, 343 F.R.D. at 509. But in at least 19 of the 26 certified states, some or all claims require proof of individual reliance or causation, including: Arizona (ACFA), Arkansas (ADTPA), Kansas (KCPA), Kentucky (express warranty), Louisiana (fraud), Maine (MUTPA), New York (express warranty), North Carolina (NCUDTPA), Pennsylvania (UTPCPL), Tennessee (fraud), Texas (express warranty and DTPA),

and Washington (WCPA) require proof of reliance,[9] while other claims in Alabama (ADTPA), Florida (FDUTPA), Illinois (ICFA), Kentucky (KCPA), Michigan (MCPA), Minnesota (CPA), New Hampshire (NHCPA), New Jersey (NJCPA), New York (NYGBL § 349), Oklahoma (OCPA), Tennessee (TCPA), and Wisconsin (WDTPA) require proof of causation.[10]

---

[9] *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D. Ariz. 2017) (Arizona CFA); *Apex Oil Co. v. Jones Stephens Corp.*, 881 F.3d 658, 662 (8th Cir. 2018) (Arkansas DTPA); *Delcavo v. Tour Res. Consultants, LLC*, 2022 WL 1062269, at *8 (D. Kan. Apr. 8, 2022); *Overstreet v. Norden Lab'ys, Inc.*, 669 F.2d 1286, 1291 (6th Cir. 1982) (Kentucky law); *In re Ford Motor Co. Vehicle Paint Litig.*, 1997 WL 539665, at *2 (E.D. La. Aug. 27, 1997); *Larsen v. Vizio, Inc.*, 2017 WL 3084273, at *4 (C.D. Cal. June 26, 2017) (Maine law); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 273 (E.D. Pa. 2013) (New York law); *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015); *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125, 193 (E.D. Pa. 2017); *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1313 (11th Cir. 2023) (Texas DTPA); *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 82 (Tex. App. 2005) (express warranty); *Eng v. Specialized Loan Servicing*, 500 P.3d 171, 181 (Wash. App. Ct. 2021).

[10] *EBSCO Indus. v. LMN Enter.*, 89 F. Supp. 2d 1248, 1265 (N.D. Ala. 2000); *Bennett v. Quest Diagnostics, Inc.*, 2023 WL 3884117, at *13 (D.N.J. June 8, 2023) (Florida law); *Bledsoe v. FCA US LLC*, 663 F. Supp. 3d 753, 774 (E.D. Mich. 2023) (Illinois law); *Corder v. Ford Motor Co.*, 869 F. Supp. 2d 835, 838 (W.D. Ky. 2012); *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 377 (E.D. Mich. 2011); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 951 (D. Minn. 2020); *Lawrence v. Philip Morris USA, Inc.*, 53 A.3d 525, 530 (N.H. 2012); *Marcus, LLC*, 687 F.3d at 606 (New Jersey law); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2012 WL 379944, at *14 (D.N.J. Feb. 6, 2012) (New York law); *Patterson v. Beall*, 19 P.3d 839, 847 (Okla. 2000); *Steamfitters Loc. Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*, 2000 WL 1390171, at *7 (Tenn. Ct. App. Sept. 26, 2000); *Valenti v. Hewlett Packard Co.*, 685 N.W.2d 172 (Wis. App. Ct. 2004); *Tietsworth*, 677 N.W.2d at 245 (Wisconsin DTPA requires loss "as a result" of "affirmative assertions" and does not allow claim for failure to disclose alleged defect).

Whether a plaintiff can "prove causation and/or reliance on a classwide basis" is a question of state law. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 512 (6th Cir. 2015); *see also Tershakovec*, 79 F.4th at 1307 (holding "presumption-of-reliance issue" requires "carefully examining the particular state laws" to determine if state law "allows for that presumption"). Here, the district court erred when it failed to rigorously analyze whether each state law claim permits a classwide inference or presumption of reliance/causation at all or only under certain circumstances, whether those circumstances exist here, and whether any inference or presumption is subject to GM's right to present individual rebuttal evidence.

For example, in granting certification of Tennessee and Texas claims with a reliance element, the district court cited *Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348 (S.D. Fla. 2021), which held that reliance could be proven on a classwide basis. *Speerly*, 343 F.R.D. at 550-51. But the Eleventh Circuit has since confirmed both certifications were reversible error because neither state permits classwide presumptions or inferences of reliance. *Tershakovec*, 79 F.4th at 1313-14.

### 3. The District Court Ignored State Law Variations In Merchantability.

The district court was also wrong to hold merchantability is an "entirely objective inquiry" across all states. *Speerly*, 343 F.R.D. at 512. Numerous states like Florida, Georgia, New Jersey, Maine, and Minnesota reject individual implied warranty claims where a vehicle has been driven extensively without issue or with

45

issues that do not render the vehicle inoperable. *E.g., Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108, 110 (Ga App. Ct. 2005) (holding 25,000 miles of use "inherently negates" unmerchantability claim and "continuing vibration at speed of 65-70 miles per hour" did "not rise to the level of a defect making the Blazer unmerchantable, even if never repaired").[11]

Every certified implied warranty class includes members whose vehicles also well serve their "intended purpose." For example, one plaintiff (who refused the Mod1A transmission flush under warranty) admits his vehicle does not vibrate to "any degree more significant[ly] than I think other vehicles vibrate." Eatherton Dep., R.245-59, PageID.19160. Another plaintiff, who had accumulated around 180,000 miles over five years, declined an offer to replace his transmission. McVea Report, R.180-1, PageID.8400; Kuhn Report, R.178-15, PageID.7892; Ellard, R.245-11, PageID.17090-92.

And plaintiffs' claim that the vehicles are unmerchantable is contradicted by the dozens of named plaintiffs who sold their vehicles during the litigation for premium prices without disclosing any transmission or their concerns.

---

[11] *See also Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *4 (D.N.J. Oct. 31, 2011); *Tellinghuisen v. Chrysler Grp., LLC*, 2014 WL 4289014, at *3 (Minn. Ct. App. Sept. 2, 2014); *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1138 (Fla. Dist. Ct. App. 2008); *Mazerolle*, 2002 WL 31367215, at *5; *Gordon v. Ford Motor Co.*, 260 A.D.2d 164, 165 (N.Y. App. Div. 1999).

The district court's failure to rigorously analyze merchantability on a state-by-state basis before conducting its predominance analysis is reversible error.

### 4.    The District Court Did Not Apply State Substantive Bars On Class Actions.

The district court violated the Rules Enabling Act in certifying classes under the Alabama DTPA, Arkansas DTPA, Louisiana UTPCPL, and the Tennessee CPA where substantive state law prohibits private class actions within the same statutory provision creating a private right of action for individual consumers. *See* Ala. Code § 8-19-10(f); Ark. Code Ann. § 4-88-113(f)(1)(B); La. Stat. Ann. § 51:1409(A); Tenn. Code Ann. § 47-18-109(g). This Court previously assumed without deciding that a "prohibition on class-action litigation" that "appears within the same statutory provision that creates the private cause of action" is "substantive for the purposes of the Rules Enabling Act." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1092-93 (6th Cir. 2016). The Court now should confirm that the Sixth Circuit adheres to the controlling portions of the Supreme Court opinions holding these laws are "so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy" and thus trump Rule 23. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 420 (2010) (Stevens, J., concurring); *see also Albright v. Christensen*, 24 F.4th 1039, 1044 (6th Cir. 2022) (holding Justice Stevens's *Shady Grove* concurrence is controlling).

47

### 5.    The District Court Ignored Individualized And Uncommon Differences Among Current And Former Owners.

The district court certified 19 classes limited to new purchasers—"[a]ll original purchasers who purchased…new class vehicles;" and another 7 containing "[a]ll purchasers" in the ownership chain—new and used alike—up to and including "current owners." *Speerly*, 343 F.R.D. at 526-30. All 26 classes improperly include individuals who resold their class vehicle, passing any purported economic injury and damages to the next buyer. This is improper. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 500 F. Supp. 3d 940, 948 (N.D. Cal. 2020) (holding putative class members who resold vehicles into unknowing market lacked standing), a*ff'd sub nom. Schell v. Volkswagen AG*, 2022 WL 187841 (9th Cir. Jan. 20, 2022); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 403 (S.D.N.Y. 2017) (a "then-unknown defect could not have affected the resale price"), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). The district court's sole reliance on *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016), to reject resale as "immaterial" was another mistake. *Speerly*, 343 F.R.D. at 526. *Carriuolo* was limited to Florida law and does not control in all 26 states where the law differs. *E.g.*, *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 859 (Ill. 2005) (plaintiff who resold vehicle without disclosing alleged defect had no "actual damage" because he "received the same value for the truck that he would have had" the vehicle had no defect). And the seven state classes that

include everyone who purchased from a GM dealer (new or used) risks a "double-recovery" for the same alleged defect in the same vehicle by two different owners—another problem that the district court was required to "explain how it plan[s] to handle" but did not. *Fox*, 67 F.4th at 302.

### D.    The District Court's Disregard Of Predominant Individualized Issues At Certification Cannot Be Cured With An Undefined "Culling" Procedure At An Unspecified Point In The Future.

The district court said it would, at some unidentified future time, "identify and cull" from the classes individuals who "never had any problems with their vehicles or never sought repairs" or whose claims are barred under substantive state law for other reasons. *Speerly*, 343 F.R.D at 523. But this further highlights the predominance problem. *Fox*, 67 F.4th at 302; *Sandusky*, 863 F.3d at 468; *In re Ford*, 86 F.4th at 729 (district courts must "actually decide" questions relevant to certification); *Tarrify*, 37 F.4th at 1110 (rejecting plans requiring mini-trials).

Excluding individuals who have "never had any problems" or "never sought repairs," is already an overwhelming task. "[F]iltering out those members" to whom GM is not liable "would undoubtedly be the driver of the litigation" and spawn time-consuming mini hearings on individual factual issues. *Sandusky*, 863 F.3d at 468; *see also Fox*, 67 F.4th at 301-02 (predominance inquiry must consider "different defenses against different class members"); *In re Gen. Motors Corp. "Piston Slap" Prod. Liab. Litig.*, 2006 WL 1049259, at *6-7 (W.D. Okla. Apr. 19, 2006) (holding

classes were not "susceptible of reasonable determination" where identifying vehicles manifesting defects "would necessarily require far more complex, individualized determinations than a simple claims procedure could practically accomplish"); *Sanneman*, 191 F.R.D. at 446 (similar).

Moreover, resorting to an undefined, but undoubtedly onerous, culling mechanism raises even more Rule 23 problems, including plaintiffs' failure to meet their burden to show that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class treatment is not a superior method where limited common issues exist but there are a "necessary number of individual inquiries" that would not be uniformly resolved based on the representative's claims. *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 631-32 (6th Cir. 2011); *see also Robinson v. Gen. Elec. Co.*, 2016 WL 1464983, at *15 (E.D. Mich. Apr. 14, 2016) (class action not superior where there are not "enough similarities that a uniform decision is likely").

Nor does the district court explain how it will try all claims to final judgment, saying only that "[a]ny logistical challenges" and a "state-by-state structure" will "be addressed by appropriate trial scheduling." *Speerly*, 343 F.R.D. at 526. But this does not "forecast how the parties will conduct the litigation from the certification stage through the trial to the final judgment." *Fox*, 67 F.4th at 302; *see also*

*Tershakovec*, 79 F.4th at 1316 (holding court must "clearly articulate a plan" for trial prior to certification); *Robinson v. Tex. Auto Dealers Ass'n*, 387 F.3d 416, 426 (5th Cir. 2004) (holding "figure-it-out-as-we-go-along approach" is reversible error).

In sum, the Court should reject the district court's plan to certify now and wait until later to figure out how to address and overcome the many individualized issues that will drive resolution of each class member's claims. The Court should reverse the certification order.

## III.  THE DISTRICT COURT ERRED BY RELYING ON CLASSWIDE DAMAGES MODELS THAT OBSCURE OR IGNORE INDIVIDUAL ISSUES AND COMPENSATE UNINJURED CLASS MEMBERS.

The district court accepted plaintiffs' suggestion to resolve the myriad individualized and uncommon fact and legal issues by relying on proffered expert opinions and models both to (i) try to establish an overpayment injury and (ii) to create a metric to pay everyone in the class. This was yet another error.

*First*, plaintiffs' economist (Eichmann) calculated average overpayment and diminution-in-value damages based on the single-defect theory that plaintiffs later abandoned in favor of the two-distinct-defects theory. *See, e.g.*, Eichmann Report, R.179-2, PageID.8192, 8201-02. His market simulation relies on plaintiffs' survey expert (Samantha Iyengar) who (like Dr. Wachs) operated under the obsolete single-defect assumption. Iyengar Report R.170-5, PageID.5578. Plaintiffs' damages models cannot reliably determine classwide damages because, among other things,

they do not reflect plaintiffs' liability theory and thus do not "measure only those damages attributable to that theory," as required by *Comcast*, 569 U.S. at 35.

*Second*, *Tyson Foods* also requires exclusion of Eichmann's average injury-and-damages opinions.[12] An individual plaintiff would need to offer *his own* proof of injury and damages, not merely to show that some people in a class were injured and he is a member of that class. Plaintiffs cannot show each class member has suffered injury by "simply relying on assumptions about the general population." *Rowe v. E.I. duPont de Nemours and Co.*, 2008 WL 5412912, *14 (D.N.J. Dec. 23, 2008). "[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand." *Tyson Foods*, 577 U.S. at 466 (Roberts, C.J., concurring). Eichmann's calculations do not provide a method for any class member to prove individual damages. *Fox*, 67 F.4th at 301 (holding district court must consider whether the "damages method necessitates fact-specific evidence"). Indeed, he admits that any recoverable damages for class members differ depending upon make, MY, the purchase transaction, and other factors. Eichmann Deposition,    R.245-39,    PageID.18523-25;    Eichmann    Schedules,    R.206-2,

---

[12] Reliance on Dr. Wachs to create classwide damages also violates *Tyson Foods*. She predicts one nationwide rate for all vehicles in each segment (*e.g.*, all MY 2015-2019 Luxury Sport cars), which are not representative of the risk of failure of a specific vehicle in a particular state (*e.g.*, a 2018 Arizona Corvette vs. a 2019 New York Corvette) and thus could not be used to prove damages in an individual case.

PageID.12292-93. He further admits some absent class members have no injuries. Eichmann Dep., R.245-39, PageID.18522. This is consistent with the conclusions of GM's expert, who analyzed actual market prices and found no evidence of any common impact on prices. Hitt Report, R.245-37, PageID.18461-67, 18472-81.

In short, Plaintiffs offer no path to proving individual class member damages, not even "mechanical calculations [that] could allow the maintenance of the class action." *Fox*, 67 F.4th at 301.

*Third*, plaintiffs' experts' models also violate GM's due process rights by stripping GM of its substantive rights to defend against persons whose vehicles have performed as bargained-for, or have been repaired under warranty, or will yet be repaired under warranty if a defect manifests, or who did not overpay, or who otherwise suffered no damages. *Johannessohn*, 9 F.4th at 986 (affirming certification denial because "cases are not tried on the evidence of one party" and defendant is "entitled to present contrary evidence suggesting the price premium theory does not appropriately provide proper damages figures for each specific class member"); *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998); 2 MCLAUGHLIN ON CLASS ACTIONS § 8:16 (19th ed. 2022).

Such "an aggregate determination is likely to result in an astronomical damages figure that does not accurately reflect the number of plaintiffs actually

injured by defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 220-221, 231 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *see In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018).

## IV.   THE DISTRICT COURT ERRED BY FINDING GM WAIVED ITS ARBITRATION RIGHTS AGAINST NON-PARTIES AND CERTIFYING CLASSES COMPOSED OF 40% OR MORE OF MEMBERS WHO AGREED TO ARBITRATE THEIR CLAIMS.

It is likely that 40% of absent class members executed arbitration agreements. These are not uniform, GM-generated agreements; each has different terms and was included in different purchase transactions. *See, e.g.,* Arbitration Agreements, R.245-58, PageID.19073-134. Depending on the terms and state-law, GM has a right to seek to enforce many of these arbitration agreements, even though plaintiffs bring the case as a class action. *See* Federal Arbitration Act, 9 U.S.C. §§ 1-16; *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013).

The district court, despite inviting GM to address the issue of arbitration "in [its] response to the class cert motion," Transcript, R.167, PageID.5476, held that by moving in 2019 to dismiss the then-*named plaintiffs,* GM had waived any arbitration rights it might have as to *all* 800,000+ absent members in the putative classes. *Speerly*, 343 F.R.D. at 524-25. This is reversible error.

As a gating issue, the "argument that a nonnamed class member generally 'is a party to the class action litigation *before the class is certified*,' is—to use the Supreme Court's words—'surely erroneous.'" *In re Hall*, 4 F.4th 376, 379 (6th Cir. 2021) (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011)). Until absent class members are legally before the court, a defendant can neither compel them to arbitration nor waive its rights to do so. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015) (district court lacked jurisdiction to adjudicate defendant's right to compel absent class members to arbitration); *Forby v. One Techs., LP*, 2020 WL 4201604, at *8 (N.D. Tex. July 22, 2020) (holding waiver of arbitration against plaintiff "has no bearing on whether [defendants] can compel the absent class members" because "the class members are not yet parties to the litigation"); *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 269 (S.D. Cal. 2023) (similar); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 853 (D. Md. 2013) (similar).[13] Thus, contrary to the district court's holding, there is "no authority that requires a party to file a conditional arbitration motion against possible future adversaries….in order to avoid waiving its rights with regard to those parties." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235 (11th Cir. 2018). Indeed,

---

[13] *See also Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019).

had GM tried to compel absent class members to arbitration prior to class certification, "it would have been impossible in practice" and "jurisdictionally impossible" for the district court to do so. *Id.* The certification order thus should be reversed because it abridges GM's substantive rights to compel arbitration. *See American Express*, 570 U.S. at 234 (indicating use of Rule 23 to invalidate private arbitration agreements would "likely" violate the Rules Enabling Act).

The district court's erroneous waiver ruling also prevented it from assessing predominance-destroying questions about differences in the existence, terms, and enforceability of arbitration agreements—leaving "no idea how many class members might face" the defense. *Fox*, 67 F.4th at 301. Nor is it known how many questions of arbitrability will be delegated to an arbitrator. *See* Arbitration Agreements, R.245-58, PageID.19096. The district should have analyzed whether the fact that "certain members of a class are subject to contracts containing an arbitration clause, while other class members are not," defeating predominance. *See Hooker v. Citadel Salisbury LLC*, 2023 WL 3020967, at *14 (M.D.N.C. Apr. 20, 2023); *Forby*, 2020 WL 4201604, at *8-9 (similar); *Spotswood v. Hertz Corp.*, 2019 WL 498822, at *11 (D. Md. Feb. 7, 2019) (similar).

The Court should reverse certification for this reason as well.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's certification order and decertify each of the 26 certified classes.

Dated: February 14, 2024

Respectfully submitted,

*/s/Renee D. Smith*
Renee D. Smith
renee.smith@kirkland.com
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
312-862-2000

Jason M. Wilcox
jason.wilcox@kirkland.com
Kirkland & Ellis LLP
1301 Pennsylvania Ave. NW
Washington, D.C. 20004
202-389-5000

*/s/Richard C. Godfrey*
Richard C. Godfrey
richardgodfrey@quinnemanuel.com
R. Allan Pixton
allanpixton@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Ste. 2700
Chicago, Illinois 60606
312-705-7400

*/s/Stephanie A. Douglas*
Stephanie A. Douglas
douglas@bsplaw.com
Susan McKeever
mckeever@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd, Ste. 400
Troy, MI 48084
248-822-7800

*Counsel for Defendant-Appellant General Motors LLC*

57

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENT

1.      This petition complies with the type-volume limitation of Fed. R. App.

P. 5(c)(1) because it contains 12,798 words excluding the parts exempted by Fed. R.

App. P. 32(f) and 6th Cir. R. 32(b).

2.      This petition complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it

has been prepared in the proportionally spaced typeface using Microsoft Word for

Office 365 with 14-point Times New Roman font.

*/s/ Stephanie A. Douglas*
Stephanie A. Douglas
douglas@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd
Suite 400
Troy, MI 248-822-7800

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the Court's CM/ECF system. This brief for was also served on counsel for the parties of record on that same date.

*/s/ Stephanie A. Douglas*
Stephanie A. Douglas
douglas@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd
Suite 400
Troy, MI 248-822-7800

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

GM designates the following documents from the district court's record that are relevant to this appeal:

| Record Entry No. | Docket Text | Page ID Nos. |
|---|---|---|
| 41 | Consolidated Amended Class Action Complaint | ## 2235 - 3135 |
| 87 | Order of Partial Dismissal | ## 4149 - 4150 |
| 103 | Order of Partial Dismissal | ## 4339 - 4340 |
| 119 | Order of Partial Dismissal | ## 420 - 4421 |
| 155 | Order of Partial Dismissal | ## 5390 - 5391 |
| 167 | Hearing Transcript on Motion for Leave to File Second Supplemental Complaint | ## 5467 - 5493 |
| 170-5 | Expert Report of Samantha Iyengar, Ph.D. | ## 5573 - 5610 |
| 175-10 | Expert Report of Rose Ray, Ph.D. | ##6403 - 6512 |
| 178-12 | Deposition Excerpts of William Mark McVea, Ph.D. | ## 7693 - 7724 |
| 178-15 | Expert Report of Robert Kuhn | ## 7877 - 7913 |
| 178-16 | William Mark McVea, Ph.D.'s Inspection Notes | ## 7914 - 7925 |
| 179-2 | Expert Report of Richard J. Eichmann | ## 8170-8212 |
| 180-1 | Expert Report of William Mark McVea, Ph.D. | ## 8293 -8417 |
| 182-1 | Expert Report of Allise Wachs | ## 8767 - 8832 |
| 182-2 | Deposition Excerpts of Allise Wachs | ## 8833 - 8893 |
| 204-16 | PX149 – Transmission Document | ## 11766 - 11817 |
| 206-2 | Eichmann Schedules 1-36a and Appendix 1 | ## 12259 - 12349 |
| 220-3 | Expert Report of Robert C. Lange | ## 14402 - 14606 (Redacted) |
| 222 | Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel | ## 15350 - 15413 |
| 225-10 | Deposition Excerpts of Richard Filiaggi | ## 15972 - 15986 |
| 234 | Order of Partial Dismissal | ## 16759 |
| 245-3 | Deposition Excerpts of Bill Goodrich | ## 16985 - 17002 |
| 245-5 | Deposition Excerpts of Robert Gonzales | ## 17012 - 17018 |

| Record Entry No. | Docket Text | Page ID Nos. |
|---|---|---|
| 245-6 | Deposition Excerpts of Peter Radecki | ## 17019 - 17031 |
| 245-8 | GM000046337, 8 Speed Compass/Warranty improvement plan | ## 17058 - 17067 |
| 245-10 | Deposition Excerpts of Donald Sicura | ## 17075 - 17082 |
| 245-11 | Deposition Excerpts of Jon Ellard | ## 17083 - 17093 |
| 245-12 | Deposition Excerpts of Dominic Eatherton | ## 17094 - 17100 |
| 245-13 | Deposition Excerpts of Michael Banks | ## 17101 - 17111 |
| 245-15 | Deposition Excerpts of Philip Weeks | ## 17119 - 17128 |
| 245-16 | Expert Report of Robert C. Lange, Appendix 6 | ## 17129 - 17295 |
| 245-19 | Kevin Sinclair Repair Order | ## 17433 - 17434 |
| 245-20 | Andre McQuade Repair Order | ## 17435 - 17437 |
| 245-21 | Richard Filiaggi Inspection Report | ## 17438 - 17442 |
| 245-22 | Daniel Drain Inspection Report | ## 17443 - 17445 |
| 245-23 | Deposition Excerpts of Joseph Sierchio | ## 17446 - 17451 |
| 245-24 | Deposition Excerpts of William Fredo | ## 17452 - 17457 |
| 245-25 | Deposition Excerpts of Richard Freeman | ## 17458 - 17467 |
| 245-26 | Deposition Excerpts of Robert Higgins | ## 17468 - 17478 |
| 245-27 | Deposition Excerpts of Donald Dykshorn | ## 17479 - 17484 |
| 245-28 | Deposition Excerpts of Jimmy Flowers | ## 17485 - 17490 |
| 245-31 | Compilation of Plaintiffs' Varying Descriptions of Shift Quality | ## 17499 - 18428 |
| 245-32 | Deposition Excerpts of Brian Lloyd | ## 18429 - 18436 |
| 245-33 | Deposition Excerpts of Dennis Speerly | ## 18437 - 18444 |
| 245-37 | Expert Report of Lorin M. Hitt, Ph.D. | ## 18459 - 18485 |
| 245-38 | Expert Report of Samantha Iyengar, Ph.D., Schedule 1 | ## 18486 - 18507 |
| 245-39 | Deposition Excerpts of Richard Eichmann | ## 18508 - 18531 |
| 245-40 | Deposition Excerpts of Troy Coulson | ## 18532 - 18540 |
| 245-41 | Deposition Excerpts of Kimberly Coulson | ## 18541 - 18546 |
| 245-49 | Richard Filiaggi Invoice | ## 18665 - 18666 |
| 245-51 | Expert Report of Lorin Hitt, Ph.D. Ex. 7 | ## 18669 - 18673 |
| 245-52 | Compilation of Plaintiffs' Price Negotiation Testimony | ## 18674 - 18862 |
| 245-53 | Compilation of Plaintiffs' Sales Documents | ## 18863 - 19048 |
| 245-58 | Compilation of Plaintiffs' Arbitration Clauses | ## 19072 - 19134 |

| Record Entry No. | Docket Text | Page ID Nos. |
|---|---|---|
| 245-59 | Compilation of Plaintiffs Who No Longer Experience, or Never Experienced Shudder | ## 19135 - 19201 |
| 245-60 | 2017 GMC Limited Warranty and Owner Assistance Program | ## 19202 - 19244 |
| 272 | Hearing Transcript on Motion for Class Certification | ## 20257 - 20311 |