**No. 23-1940**

In the

# United States Court of Appeals
## For the Sixth Circuit

————————————

DENNIS SPEERLY, et al.,

*Plaintiffs-Appellees,*

v.

GENERAL MOTORS LLC,

*Defendant-Appellant.*

————————————

On Appeal from the United States District Court for the
Eastern District of Michigan, No. 2:19-cv-11044
Hon. David M. Lawson

————————————

**BRIEF OF THE CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA, THE AMERICAN
TORT REFORM ASSOCIATION, AND THE ALLIANCE FOR
AUTOMOTIVE INNOVATION AS AMICI CURIAE
IN SUPPORT OF DEFENDANT-APPELLANT**

————————————

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, Va. 23219
Telephone: (804) 775-4746
bschmalzbach@mcguirewoods.com

*Counsel for Amici Curiae*
*Additional counsel listed on inside cover*

Jennifer B. Dickey
Kevin R. Palmer
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for Amicus Curiae*
*Chamber of Commerce of the*
*United States of America*

Charles H. Haake
ALLIANCE FOR AUTOMOTIVE
INNOVATION
1050 K Street, NW, Suite 650
Washington, DC 20001

*Counsel for Amicus Curiae*
*Alliance for Automotive Innovation*

H. Sherman Joyce
Lauren Sheets Jarrell
AMERICAN TORT REFORM ASSOCIATION
1101 Connecticut Avenue, NW
Suite 400
Washington, DC 20036

*Counsel for Amicus Curiae*
*American Tort Reform Association*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 23-1940          Case Name: Dennis Speerly, et al. v. General Motors, LLC

Name of counsel:  Brian D. Schmalzbach

Pursuant to 6th Cir. R. 26.1, Chamber of Commerce of the United States of America
                              *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> None known.

---

### CERTIFICATE OF SERVICE

I certify that on                  February 21, 2024                  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Brian D. Schmalzbach

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

i

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 23-1940          Case Name: Dennis Speerly, et al. v. General Motors, LLC

Name of counsel:  Brian D. Schmalzbach

Pursuant to 6th Cir. R. 26.1, American Tort Reform Association
                              *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> None known.

---

CERTIFICATE OF SERVICE

I certify that on _____ February 21, 2024 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Brian D. Schmalzbach

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

ii

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 23-1940          Case Name: Dennis Speerly, et al. v. General Motors, LLC

Name of counsel:  Brian D. Schmalzbach

Pursuant to 6th Cir. R. 26.1, Alliance for Automotive Innovation
*Name of Party*

makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

None known.

### CERTIFICATE OF SERVICE

I certify that on _____ February 21, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Brian D. Schmalzbach

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

iii

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF AMICI CURIAE ............................................1

STATEMENT OF CONSENT, AUTHORSHIP, AND
    CONTRIBUTION........................................................................................2

INTRODUCTION ............................................................................................3

ARGUMENT.....................................................................................................6

I.     The district court erred in certifying these substantially
      uninjured classes...................................................................................6

     A.    This Court should confirm that Rule 23(b)(3) classes must
          exclude the uninjured. ...................................................................6

     B.    Even if the uninjured could be damages class members,
          the absence of classwide proof of injury defeats
          predominance. ...............................................................................11

II.    Circumventing Article III and Rule 23 restrictions on class
      actions harms American businesses and the economy as a
      whole. ................................................................................................14

CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................10, 11

*Arizona Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011)......................................................................3

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ..........................................................12

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003)........................................................14

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2023).........................................................13

*In re Carpenter Co.*,
  No. 14-0302, 2014 WL 12809636 (6th Cir. Sept. 29, 2014) .........7, 8

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................................11

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)......................................................................16

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019)....................................................11

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) .........................................................10

*In re Ford Motor Co.*,
  86 F.4th 723 (6th Cir. 2023).......................................................8, 14

*Fox v. Saginaw Cnty., Michigan*,
  67 F.4th 284 (6th Cir. 2023)....................................................11, 13

*Gooch v. Life Invs. Ins. Co. of Am.,*
    672 F.3d 402 (6th Cir. 2012) ...................................................................8

*Halvorson v. Auto-Owners Ins. Co.,*
    718 F.3d 773 (8th Cir. 2013) .................................................................10

*Leyva v. Medline Indus. Inc.,*
    716 F.3d 510 (9th Cir. 2013) .................................................................13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................7, 8

*Microsoft Corp. v. Baker,*
    137 S. Ct. 1702 (2017) ...........................................................................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022) ...................................................................8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) .................................................................................9

*Smith v. Bayer Corp.,*
    564 U.S. 299 (2011) .................................................................................9

*Speerly v. Gen. Motors, LLC,*
    343 F.R.D. 493 (E.D. Mich. 2023) ...............................................4, 5, 10, 12, 13

*Tarrify Props, LLC v. Cuyahoga Cnty.,*
    37 F.4th 1101 (6th Cir. 2022) ...............................................................13

*Town of Chester v. Laroe Ests., Inc.,*
    581 U.S. 433 (2017) .................................................................................9

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) .......................................................................4, 7, 8

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ...................................................................5, 12, 13

*Ward v. Nat'l Patient Acct. Servs. Sols., Inc.,*
    9 F.4th 357 (6th Cir. 2021) .....................................................................7

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023)............................................................12

**Rules**

Fed. R. Civ. P. 23..............................................................................5

Fed. R. Civ. P. 82............................................................................10

**Other Authorities**

1 McLaughlin on Class Actions § 3:12 (20th ed.)................................8

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
   Federal Practice and Procedure § 1785.1 (3d ed.).......................10

2023 Carlton Fields Class Action Survey (2023), available at
   https://classactionsurvey.com/ ...........................................15, 16

Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment
   Practices Liability Insurance* (July 2011) ..........................................15

Henry J. Friendly, *Federal Jurisdiction: A General View* (1973) ........................15

U.S. Chamber Institute for Legal Reform,
   *Do Class Actions Benefit Class Members? An Empirical Analysis
   of Class Actions* (Dec. 2013), available at
   http://bit.ly/3rrHd29.......................................................................15

U.S. Chamber Institute for Legal Reform,
   TransUnion *and Concrete Harm: One Year Later* (June 2022),
   available at https://instituteforlegalreform.com
   /wp-content/uploads/2022/06/ILR-Research-Paper-
   Spokeo-Transunion-v9-FINAL.pdf..............................................16

U.S. Chamber Institute for Legal Reform,
   *Unfair, Inefficient, Unpredictable: Class Action Flaws and the
   Road to Reform* (Aug. 2022), available at
   https://instituteforlegalreform.com/wp-
   content/uploads/2022/08/ILR-Class-Action-Flaws-
   FINAL.pdf........................................................................................17

## IDENTITY AND INTEREST OF AMICI CURIAE

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. The Chamber represents around 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus briefs in cases, like this one, that raise issues of concern to the nation's business community.

The American Tort Reform Association ("ATRA") is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation. For more than three decades, ATRA has filed amicus briefs in cases involving important liability issues.

The Alliance for Automotive Innovation ("Auto Innovators") is a collective trade organization representing the voice of the automotive

industry.  Focused on creating a safe and transformative path for sustainable industry growth, Auto Innovators represents the manufacturers producing nearly 98 percent of cars and light trucks sold in the United States. Auto Innovators is directly involved in regulatory and policy matters affecting the light-duty vehicle market across the country.  Members include motor vehicle manufacturers, original equipment suppliers, and technology and other automotive-related companies.

Amici's members and their subsidiaries are often targeted as defendants in class actions.  Amici thus are familiar with class action litigation, both from the perspective of individual defendants in class actions and from a more global perspective.  Amici have a significant interest in this case because the proper application of Article III and Rule 23 raise issues of immense significance not only for their members, but also for the customers, employees, and other businesses that depend on them.

### STATEMENT OF CONSENT, AUTHORSHIP, AND CONTRIBUTION

Counsel for all parties consented to the filing of this brief.  No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amici curiae, their members, or their counsel, made any monetary

contribution intended to fund the preparation or submission of this brief.

## INTRODUCTION

This case provides a recipe for transmuting the claims of a few dissatisfied customers into billion-dollar class actions on behalf of largely uninjured class members. But that attempted Article III alchemy cannot survive fundamental limitations on federal jurisdiction in the class action context. To the contrary: "In an era of frequent litigation"—and especially in "class actions"—"courts must be more careful to insist on the formal rules of standing, not less so." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011).

The District Court relaxed those rules and omitted the rigorous analysis required by Rule 23 when it certified 26 statewide classes of largely satisfied buyers of GM vehicles with alleged transmission defects. The vast majority of class members never had any transmission problem with their vehicles, and thus received what they paid for. But class members who receive a product that functions as promised lack standing to sue for an alleged defect that never affected them. The district court certified those classes despite those problems because, in its view, all those uninjured class members were a problem for another day.

3

This Court should reverse the order certifying dozens of such classes and creating billions of dollars in exposure. In doing so, it should correct two fundamental errors in the district court's standing analysis.[1]

*First*, this Court should clarify that it is never permissible under Article III to certify a largely (if not entirely) uninjured class. The act of certification makes absent class members parties subject to the same standing requirements as named plaintiffs. Yet here, even if *some* of those class members had standing, the district court allowed many more uninjured class members to ride on their coattails. Neither Article III nor Rule 23 permits that approach, and this Court should take the opportunity to confirm what *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), necessarily requires: no damages class can be certified without evidence that each class member has Article III standing. The district court's proposal to kick the can down the road by "identify[ing] and cull[ing]" uninjured class members after they have already bloated the certified class flouts Article III. *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 523 (E.D. Mich. 2023).

---

[1] Although this amicus brief focuses on the errors in the district court's standing analysis, the Opening Brief persuasively highlights other errors in the class certification order that independently warrant reversal.

*Second*, to the extent this Court thinks it may be permissible in some cases to certify a class that contains some small number of uninjured class members, it should make clear that this is not one of those cases. The need to winnow out those uninjured class members before judgment would necessarily raise individual inquiries that would predominate over the common questions. Under Rule 23(b)(3), plaintiffs must show, among other things, that any common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). That is Plaintiffs' burden of *proof*, not just of pleading: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And that obligation applies to questions of Article III standing no less than the merits. The district court cannot simply circumvent the fundamental standing issue by holding it was "sufficient that the plaintiffs have *alleged* that every class member suffered a loss." *Speerly*, 343 F.R.D. at 523. Here, the detailed individualized inquiries needed to test the *proof* of each class member's injury-in-fact would predominate over any common questions. The class certification order should be reversed.

5

# ARGUMENT

## I.    The district court erred in certifying these substantially uninjured classes.

Plaintiffs sought to certify classes for 26 states covering those who bought an array of different GM vehicles whose only commonality was that they had 8-speed transmissions.  Most of those buyers never had any transmission problems with their vehicles, and thus received the benefit of their bargain.  Yet the district court granted class certification as though the mountain of uninjured class members was but a speed bump along the way.  That was error.  As a straightforward Article III matter, that class could not be certified because it would contain uninjured class members.  And in any event, the need to separate all the uninjured class members from any who would have standing to sue would destroy the predominance of any common issues required by Rule 23(b)(3).

### A.    This Court should confirm that Rule 23(b)(3) classes must exclude the uninjured.

In this Circuit, a fundamental class-certification question has escaped resolution:  Can a damages class be certified without evidence that each class member has Article III standing?  This Court should resolve this issue and

clarify that every member of a class certified under Rule 23(b)(3) must have standing.[2]

*TransUnion* held that "[e]very class member must have Article III standing in order to recover individual damages." 141 S. Ct. at 2208. But that decision addressed a final judgment awarding damages to absent class members—not the class-certification order itself. So the Supreme Court did not explicitly resolve "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *Id.* at 2208 n.4.

Yet the same fundamental principles of Article III standing that were dispositive in *TransUnion* confirm why each putative class member must show standing before certification. First, "'[e]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 360–61 (6th Cir. 2021) (quoting *Lujan v. Defs. of*

---

[2] A non-precedential order by a panel of this Court suggested that each class member must have standing to qualify for certification. *See In re Carpenter Co.*, No. 14-0302, 2014 WL 12809636, at *2 (6th Cir. Sept. 29, 2014) (analyzing propriety of class certification based on "whether the definition of the class is sufficiently narrow to exclude uninjured parties").

*Wildlife*, 504 U.S. 555, 561 (1992)); *see also TransUnion*, 141 S. Ct. at 2208 (plaintiffs must maintain standing "at all stages" of a case).

At class certification, the necessary manner and degree of evidence is, at a minimum, proof by a preponderance of the evidence. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 & n.6 (9th Cir. 2022) ("We therefore join our sister circuits in concluding that plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." (citing cases)); *see also* 1 McLaughlin on Class Actions § 3:12 (20th ed.) ("[T]here is broad agreement in the circuit courts to apply a preponderance of the evidence standard to the class certification determination.").[3]    So before certifying a class, and thus exercising jurisdiction over the merits of the claims of absent class members, the district

---

[3] This Circuit has not yet addressed the standard of proof at class certification in a precedential opinion. *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 418 n.8 (6th Cir. 2012) ("[W]e have no occasion to decide the evidentiary standard for factual findings during class certification."); *see also In re Carpenter Co.*, 2014 WL 12809636, at *3. Yet it is well-settled that "[t]he party seeking class certification has a burden of *proof*," *In re Ford Motor Co.*, 86 F.4th 723, 729 (6th Cir. 2023), and a plaintiff that cannot show that the Rule 23 requirements are more likely than not satisfied cannot (in any meaningful sense) *prove* those requirements.

court must find by a preponderance of evidence that it may do so. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (unnamed class members are not "part[ies] to the class-action litigation *before the class is certified*").[4]

Second, in the analogous context of intervention by right, it is well-settled that each plaintiff must show Article III standing to seek money damages. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). Like mandatory intervention, class actions are procedures that "enabl[e] a federal court to adjudicate claims of multiple parties at once, instead of in separate suits . . . , leav[ing] the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality op.). In each case, additional plaintiffs are in some sense joined. These plaintiffs would need independent Article III standing to bring an unjoined damages lawsuit. Nothing about the procedural mechanisms the Rules have created for more efficiently considering their claims can relax that irreducible constitutional

---

[4] As the Chamber and ATRA explained in a recent amicus brief in another automotive class action pending before this Court, district courts must exercise their gatekeeping function under Rule 702 when plaintiffs try to prove those Rule 23 requirements using expert testimony. *See* Chamber & ATRA Br. as *Amici Curiae*, Doc. 47, *In re Nissan North Am., Inc. Litig.*, No. 23-5950 (Feb. 2, 2024).

9

requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act."); *see also* Fed. R. Civ. P. 82 (instructing that the "rules do not extend . . . the [subject-matter] jurisdiction of the [United States] district courts").

This Court thus should join the other appellate courts refusing to certify damages classes containing uninjured members. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision."); 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785.1 (3d ed.) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention."). That holding would require reversing the district court, which fully excused the plaintiffs from the burden of proving that each class member suffered an injury-in-fact. *See Speerly*, 343 F.R.D. at 523 ("[I]t is

sufficient that the plaintiffs have *alleged* that every class member suffered a loss." (emphasis in original)).

## B.    Even if the uninjured could be damages class members, the absence of classwide proof of injury defeats predominance.

In any event, these damages classes could not be certified because the many uninjured class members destroy predominance under Rule 23(b)(3).

Before certifying a damages class, a court must engage in "rigorous analysis"—based on evidentiary proof—to determine that common issues will predominate over individualized questions. *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 300 (6th Cir. 2023); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (quoting *Amchem*, 521 U.S. at 615) (noting "the court's duty to take a 'close look' at whether common questions predominate over individual ones"). "If many or most of the putative class members could not show that they suffered an injury fairly traceable to the defendant's misconduct, then they would not be able to recover, and that is assuredly a relevant factor that a district court must consider when deciding whether and how to certify a class." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019). Standing for unnamed class members thus presents a "powerful problem under Rule 23(b)(3)'s predominance factor." *Id.*; *see also*

*In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (if a substantial number of class members "in fact suffered no injury," the "need to identify those individuals will predominate"); *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (vacating class certification for failure to consider effect of individualized injury inquiries on predominance).

The overwhelming number of class members who had no transmission issue creates an inescapable predominance problem here.  And none of the district court's responses can fix it.  That all the named Plaintiffs assert manifest defects is unsurprising, *Speerly*, 343 F.R.D. at 522, but testing even just their asserted experiences (let alone all class members' experiences) would require burdensome individualized inquiries.  For example, GM would be entitled at a minimum to evaluate what specific "transmission" issue each owner perceived; test whether that issue is replicable; and investigate how that owner maintained the vehicle's tires (which can cause similar complaints).  *See* Opening Br. 10–13.  And Plaintiffs' expert's say-so that all class members will experience the purported defects could not prevent GM from proving that many individual class members never did. *Speerly*, 343 F.R.D. at 522; *see also Dukes*, 564 U.S. at 367 ("[A] class cannot be certified on the premise that [a defendant] will not be entitled to litigate . . .

12

defenses to individual claims."). After all, "[w]hat matters to class certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

Nor can the district court's inadequate analysis be saved by insisting that "'the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).'" *Speerly*, 343 F.R.D. at 523–24 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)). The constitutional question *whether* each class member had any cognizable injury is distinct from the question *to what extent* that injury resulted in damages. And in any court, the need to show whether each class member was concretely injured *at all* presents a core predominance problem. *See, e.g.*, *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 470 (9th Cir. 2023) (common policy of not paying overtime does not predominate over individualized question "whether the class members actually worked overtime").[5]

---

[5] In any event, the district court erred in brushing off predominance problems with individualized damages. That back-of-the-hand flouts this Court's holding that "if fact-specific damage trials will inevitably overwhelm common liability questions, individual issues may predominate." *Fox*, 67 F.4th at 301; *see also Tarrify Props, LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106–08 (6th Cir. 2022). The Ninth Circuit dictum

So even if *any* class member had Article III standing here, many would

not, and that alone should have precluded class certification.  That glut of

uninjured class members precludes a damages class, and in any event, the

individualized efforts needed to separate them from any actually affected

class members would destroy predominance under Rule 23(b)(3).

## II.    Circumventing Article III and Rule 23 restrictions on class actions harms American businesses and the economy as a whole.

The district court's laissez-faire approach to uninjured class members

magnifies the burdens that class action litigation imposes on the business

community and the public.  That approach thus exacerbates "the procedural

unfairness to which class actions are uniquely susceptible."  *In re Ford Motor*

*Co.*, 86 F.4th at 729.

Class action litigation costs in the United States are oppressive and

getting worse.  In 2022 (the most recent year for which data is available),

---

quoted by the district court merely recognizes that calculations under an
appropriate formulaic model may not be burdensome.  But burdensome
individualized inquiries are not exempted from the predominance inquiry
just because they relate to damages.  *See Bell Atl. Corp. v. AT&T Corp.*, 339
F.3d 294, 307 (5th Cir. 2003) ("Class treatment, however, may not be suitable
where the calculation of damages is not susceptible to a mathematical or
formulaic calculation, or where the formula by which the parties propose to
calculate individual damages is clearly inadequate.").

those costs surged to $3.5 billion, continuing a long-running trend of rising costs. *See* 2023 Carlton Fields Class Action Survey, at 4–6 (2023), available at https://ClassActionSurvey.com. Defending *even one* class action can cost a business over $100 million. *See, e.g.*, Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment Practices Liability Insurance* 1 (July 2011). And those class actions routinely drag on for years, accruing legal fees without resolution of class certification—let alone the dispute as a whole. *See* U.S. Chamber Institute for Legal Reform, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions*, at 1, 5 (Dec. 2013), available at http://bit.ly/3rrHd29 ("Approximately 14 percent of all class action cases remained pending four years after they were filed, without resolution or even a determination of whether the case could go forward on a class-wide basis.").

The extraordinary exposure created by certifying a class also coerces defendants to settle even cases that ought to be resolved in their favor on the merits. Judge Friendly aptly termed these "blackmail settlements." Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973). As the Supreme Court explained, "Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find

15

it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978); *see also Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1715 (2017) (class certification may create a "reverse death knell" that "'force[s] a defendant to settle rather than . . . run the risk of potentially ruinous liability'" (quoting Advisory Committee's 1998 Note on subd. (f) of Fed. Rule Civ. Proc. 23)).  Over the last five years, well over half of class actions have resulted in settlements—including over 73% of class actions in 2021.  *See* 2023 Carlton Fields Class Action Survey 22.

Rigorous enforcement of both Article III and Rule 23 at the class-certification stage would be a much-needed step in the right direction. "Enforcing Article III's requirements at the class certification stage ensures that parties and courts do not needlessly expend time and money—and defendants are not faced with unjustified settlement pressure—litigating a certified class action through trial only for a court to conclude at final judgment that significant portions of the certified class lack standing."  U.S. Chamber Institute for Legal Reform, TransUnion *and Concrete Harm: One Year Later*, at 51 (June 2022), available at https://instituteforlegalreform.com /wp-content/uploads/2022/06/ILR-Research-Paper-Spokeo-Transunion- v9-FINAL.pdf.  But if the district court's lax analysis goes uncorrected, the

already immense pressure on businesses to settle improperly brought class actions will continue to balloon no matter if plaintiffs have suffered any actual harm. That coercion hurts the entire economy, because the attorney's fees and costs accrued in defending and settling overbroad class actions are ultimately absorbed by consumers and employees through higher prices and lower wages. *See* U.S. Chamber Institute for Legal Reform, *Unfair, Inefficient, Unpredictable: Class Action Flaws and the Road to Reform*, at 40 (Aug. 2022), available at https://instituteforlegalreform.com/wp-content/uploads/2022/08/ILR-Class-Action-Flaws-FINAL.pdf (explaining why "overbroad class actions are nothing more than a mechanism for expanding the size of a given class to justify a windfall for attorneys who claim to represent the interests of uninjured class members").

## CONCLUSION

For these reasons, this Court should reverse the class certification order.

Dated: February 21, 2024

Jennifer B. Dickey
Kevin R. Palmer
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for Amicus Curiae*
*Chamber of Commerce of the*
*United States of America*

Charles H. Haake
ALLIANCE FOR AUTOMOTIVE
INNOVATION
1050 K Street, NW, Suite 650
Washington, DC 20001

*Counsel for Amicus Curiae*
*Alliance for Automotive Innovation*

Respectfully submitted,

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-4746
bschmalzbach@mcguirewoods.com

*Counsel for Amici Curiae*

H. Sherman Joyce
Lauren Sheets Jarrell
AMERICAN TORT REFORM ASSOCIATION
1101 Connecticut Avenue, NW
Suite 400
Washington, DC 20036

*Counsel for Amicus Curiae*
*American Tort Reform Association*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,579 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, 14-point Book Antiqua font using Microsoft Word.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2024, the foregoing was filed with

the Clerk of the United States Court of Appeals for the Sixth Circuit using

the appellate CM/ECF system, which will also serve counsel of record.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach