# United States Court of Appeals
# For the Sixth Circuit

DENNIS SPEERLY, ET AL.,

*Plaintiffs-Appellees,*

v.

GENERAL MOTORS LLC

*Defendant-Appellant*

*On Appeal from the United States District Court
for the Eastern District of Michigan
Honorable David M. Lawson, United States District Court Judge*

## PLAINTIFFS-APPELLEES' OPPOSITION TO PETITION FOR REHEARING EN BANC

Theodore J. Leopold
**Cohen Milstein
Sellers & Toll PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com

Douglas J. McNamara
Karina Puttieva
Madelyn Petersen
**Cohen Milstein
Sellers & Toll PLLC**
1100 New York Ave. NW,
5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
dmcnamara@cohenmilstein.com
kputtieva@cohenmilstein.com
mpetersen@cohenmilstein.com

*Attorneys for Class Plaintiffs-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 6th Cir. R. 26.1, none of the Class Plaintiffs-Appellees is a subsidiary or affiliate of a publicly owned corporation, and Class Plaintiffs-Appellees and their counsel are aware of no publicly owned corporation that is not a party to this appeal and has a financial interest in the outcome

# TABLE OF CONTENTS

I. Introduction ........................................................................... 1

II. Standard for En Banc Review ......................................... 2

III. Response to GM's Petition ............................................... 3

    A. The Panel Followed This Court's Precedent Upholding Class Certification Whether a Defect Manifested ................. 3

        1. Economic injury resulting from buying a defectively designed product establishes  standing ...... 3

        2. The Panel's decision adheres to *Daffin* ......................... 8

        3. The Panel's decision adheres to *Fox* ........................... 11

    B. The Panel Correctly Applied *In Re Ford* to Affirm that the District Court Rigorously Analyzed the Evidence ........ 13

        1. The Panel and the District Court considered but were unmoved by GM's spin on the evidence ............. 13

        2. The Panel's decision comports with *Rikos* and other decisions finding a reliance element does not automatically preclude class treatment ............... 16

    C. GM Waived Its Dubious Class Defense of Absent Class Member Arbitration ........................................................... 18

IV. Conclusion .................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Aqua Dots Prod. Liab. Litig.,*
654 F.3d 748 (7th Cir. 2011) ................................................................. 5

*Beattie v. CenturyTel, Inc.,*
511 F.3d 554 (6th Cir. 2007) ............................................................... 17

*Boykin v. Fam. Dollar Stores of Michigan, LLC,*
3 F.4th 832 (6th Cir. 2021) ................................................................ 19

*Chapman v. Gen. Motors LLC,*
531 F. Supp. 3d 1257 (E.D. Mich. 2021) ......................................... 4, 8

*Cole v. General Motors Corp.,*
484 F.3d 717 (5th Cir. 2007) ............................................. 4, 5, 11, 12

*Crawford v. FCA US, LLC,*
No. 2:20-CV-12341, 2021 WL 3603342 (E.D. Mich. Aug.
13, 2021) ................................................................................................ 4

*Daffin v. Ford Motor Co.,*
458 F.3d 549 (6th Cir. 2006) ...................................................... *passim*

*Debernardis v. IQ Formulations, LLC,*
942 F.3d 1076 (11th Cir. 2019) ........................................................... 5

*Droesser v. Ford Motor Co.,*
No. 19-cv-12365, 2023 WL 2746792 (E.D. Mich. Mar. 31,
2023) ................................................................................................. 4, 7

*Earl v. Boeing Co.,*
53 F.4th 897 (5th Cir. 2022) ............................................................... 8

*In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab.
Litig.,*
54 F.4th 28 (1st Cir. 2022) ............................................................. 4, 7

ii

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
No. 16-MD-02744, 2017 WL 1382297 (E.D. Mich. Apr. 18, 2017) .................................................................................... 4

*In re Ford Motor Co.*,
86 F.4th 723 (6th Cir. 2023) ............................... 1, 13, 14, 16

*Fox v. Saginaw Cnty., Michigan*,
67 F.4th 284 (6th Cir. 2023) ...................................... 11, 12

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
393 F. Supp. 3d 871 (N.D. Cal. 2019) ................................ 5

*In re Gen. Motors LLC Ignition Switch Litig.*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018) ................................. 9

*In re General Motors, LLC*,
No. 23-0509 (6th Cir. Jun 20, 2024), (ECF No. 8) ............ 10

*George v. Omega Flex, Inc.*,
874 F.3d 1031 (8th Cir. 2017) ............................................ 6

*Gutierrez v. Wells Fargo Bank, N.A.*,
889 F.3d 1230 (11th Cir. 2018) ....................................... 19

*Hadley v. Chrysler Grp., LLC*,
624 F. App'x 374 (6th Cir. 2015) ................................... 1, 3

*Hampton v. Gen. Motors*,
LLC, 631 F. Supp. 3d 1041 (E.D. Okla. 2022) ................... 7

*Harper v. General Motors, Corp.*,
2:21-cv12907-DML-DRG (E.D. Mich.) ............................. 20

*Henry Schein v. Stromboe*,
102 S.W.3d 675 (Tex. 2002) ....................................... 17, 18

*Huertas v. Bayer US LLC*,
No. 23-2178, 2024 WL 4703136 (3rd Cir. Nov. 7, 2024) ...... 4

*Jefferson v. Gen. Motors, LLC*,
   No. 2:20-cv-02576, 2023 WL 5662596 (W.D. Tenn. Aug.
   31, 2023) ................................................................................ 10

*Jennings v. General Motors LLC*,
   No. 1:20-CV-2638, 2023 WL 5891268 (N.D. Ohio Sept. 11,
   2023) ....................................................................................... 5

*Johannessohn v. Polaris Indus. Inc.*,
   9 F.4th 981 (2021) ............................................................. 6, 11

*Langan v. Johnson & Johnson Consumer Cos. Inc.*,
   897 F.3d 88 (2d Cir. 2018) ..................................................... 4

*Lessin v. Ford Motor Co.*,
   No. 3:19-cv-01082, 2024 WL 4713898 (S.D. Cal. Nov. 7,
   2024) ...................................................................................... 18

*Loreto v. Procter & Gamble Co.*,
   515 F. App'x 576 (6th Cir. 2013) ........................................ 1, 3

*Manasher v. NECC Telecom*,
   310 F. App'x 804 (6th Cir. 2009) ......................................... 19

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) .................................................. 5

*In re Nissan N.A., Inc.*
   (No. 23-5950) ........................................................................ 14

*Quackenbush v. Am. Honda Motor Co., Inc.*,
   2022 WL 1240866 (N.D. Cal. Apr. 27, 2022) ....................... 10

*Quackenbush v. Am. Honda Motor Co., Inc.*,
   No. 20-05599, 2021 WL 6116949 (N.D. Cal. Dec. 27, 2021) ................. 7

*Raymo v. FCA US LLC*,
   475 F. Supp. 3d 680 (E.D. Mich. 2020) ................................. 4

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) .................................... 2, 16, 17

iv

*In re Takata Airbag Prod. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ....................................... 5

*Tershakovec v. Ford Motor Co.*,
    79 F.4th 1299 (11th Cir. 2023) ................................ 11, 12, 13

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ......................................................... 6, 7

*Tyson's Foods v. Bouophakeo*,
    577 U.S. 442 (2016) ............................................................ 20

*Weidman v. Ford Motor Co.*,
    No. 18-CV-12719, 2022 WL 1071289 (E.D. Mich. Apr. 8,
    2022) ................................................................................ 14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab.
Litig.*,
    722 F.3e 838 (6th Cir. 2013) ...................................... 1, 3, 6

*White v. Gen. Motors LLC*,
    No. 1:21-cv-00410, 2023 WL 3278460 (D. Colo. May 5,
    2023) .................................................................................. 7

## Statutes

Texas Deceptive Trade Practices Act ...................................... 18

## Other Authorities

Fed. R. App. P. 35 .................................................................... 2

## I.    INTRODUCTION

GM's 8L transmissions had two design defects through 2019: the automatic transmission fluid would fail causing shudder, and the transmission's valve body could trap air causing harsh shifts (lurching, jerking, and hesitation). Four jurists have analyzed the evidence of these defects and concluded class treatment is appropriate.

Neither GM nor its amici can justify the extraordinary step of en banc review of the unanimous panel decision. The Panel followed this Court's rulings in *Daffin, Whirlpool, Loreto,* and *Hadley,* finding where a defendant omitted material information about a defect that either caused consumers to pay artificially inflated prices or diminished their resale value, the consumer has standing and could sue under various state laws, regardless of manifestation of the defect.

Furthermore, the Panel's decision does not conflict with the recent class decision in *In re Ford.* The Panel (like the District Court) considered and rejected GM's arguments about design changes, differences in warranty claims, customer expectations, and evolving knowledge, finding common evidence could show that GM knowingly sold defectively designed vehicles that endangered its customers and caused economic

injury. The Panel, following *Rikos*, concluded any purported individual reliance issues did not preclude class treatment.

Finally, the Panel followed this Court's precedent to find GM waived any arbitration defense against class certification by failing to assert it until three years into litigation. Furthermore, this defense is one GM could only raise after the class trial when the presently unknown absent class member filed a claim. It is a defense that cannot affect trial nor predominate over common issues. En banc review is not merited.

## II.   STANDARD FOR EN BANC REVIEW

Federal Rule of Appellate Procedure 35(a) states that "en banc … rehearing is not favored and ordinarily will not be ordered" outside two narrow instances. The first is when "en banc consideration is necessary to secure and maintain uniformity of the court's decisions." FRAP 35(a)(1). To meet this exception, the petitioner must demonstrate that "the panel decision conflicts with a decision of the United States Supreme Court or of the court to which the petition is addressed." FRAP 35(b)(1)(A). The second exception is when "the proceeding involves a question of exceptional importance." FRAP 35(a)(2). The Sixth Circuit's internal rules repeat these limitations, admonishing that alleged errors

in the determination of state law, assessment of the facts of the case, or application of correct precedent to the facts are matters for panel rehearing but not for rehearing en banc. 6th Cir. I.O.P. 35(a).

## III.  RESPONSE TO GM'S PETITION

### A.  The Panel Followed This Court's Precedent Upholding Class Certification Whether a Defect Manifested

#### 1.  <u>Economic injury resulting from buying a defectively designed product establishes standing</u>

Contrary to GM's petition,  the Panel's opinion that consumers who overpaid for defective products have Article III standing is not novel or irreconcilable with this Court's decisions. Pet. 10-14, ECF No. 55. For example, in *Loreto v. Procter & Gamble Co.*, this Court held that an overpayment based on a misrepresentation sufficed for standing. 515 F. App'x 576, 581 (6th Cir. 2013). The contrary is also true: this Court has held plaintiffs lack standing when they "do not allege any facts in support of their diminished value claim." *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 379 (6th Cir. 2015). This Court also affirmed class certification of claims asserting an overpayment/diminished value for a defectively designed product without requiring a manifested defect in *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) and *In re Whirlpool Corp.*

*Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 857 (6th Cir. 2013).

Numerous district courts within the Sixth Circuit have relied on these decisions to hold a consumer adequately pled a plausible injury-in-fact where she alleged she would have paid less for her vehicle had the manufacturer not omitted the existence of a hidden defect. *Droesser v. Ford Motor Co.*, No. 19-cv-12365, 2023 WL 2746792, at *7 (E.D. Mich. Mar. 31, 2023); *Crawford v. FCA US, LLC*, No. 2:20-CV-12341, 2021 WL 3603342, at *2 (E.D. Mich. Aug. 13, 2021); *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1275 (E.D. Mich. 2021); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 694 (E.D. Mich. 2020); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MD-02744, 2017 WL 1382297, at *5 (E.D. Mich. Apr. 18, 2017).

Nearly every circuit agrees that allegations of overpayment or diminished value satisfy Article III standing, regardless of manifestation of the defect. *See, e.g.*, *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28 (1st Cir. 2022); *Langan v. Johnson & Johnson Consumer Cos. Inc.*, 897 F.3d 88, 92 (2d Cir. 2018*); Huertas v. Bayer US LLC*, No. 23-2178, 2024 WL 4703136, *3 (3rd Cir. Nov. 7, 2024); *Cole v.*

*General Motors Corp.,* 484 F.3d 717, 722-23 (5th Cir. 2007);[1] *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 750-51 (7th Cir. 2011); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019).

Here, Plaintiffs alleged and supported with expert evidence admitted after a full *Daubert* challenge, that every Class Member overpaid because of GM's failure to disclose the transmission defects and that their vehicle's value diminished after the market learned of the transmission problems. (Daubert Ruling) R.267, PageID.20207. The overpayment was calculated through two separate well-established expert methodologies: (1) conjoint analysis; and (2) cost-of-repair analysis, using a cost-of-repair model based on GM's own abandoned service package proposal for the very defect at issue. *Id.* A third damages model based on diminished resale value was established through a hedonic regression analysis. *Id.,* PageID.20208. These well-accepted

---

[1] Besides *Cole*, GM has repeatedly lost the same "manifest defect" argument on the same grounds in other courts. *See, e.g., Jennings v. General Motors LLC*, No. 1:20-CV-2638, 2023 WL 5891268, at *2 (N.D. Ohio Sept. 11, 2023); *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1125 (S.D. Fla. 2019); *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 884 (N.D. Cal. 2019).

classwide damages models exceed what this Court accepted to affirm class certification in *Daffin* and *Whirlpool*. Thus, the Panel rightly found this is not a "no-injury case" where the plaintiff "is largely unable to present economic loss" without a manifested defect. Op. 15.

GM relies heavily on an outlier Eighth Circuit case that misstates Eighth Circuit precedent. Pet. 3, 11 (citing *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981 (2021)). The *Johannessohn* majority claimed that despite expert evidence demonstrating customers overpaid for defectively designed ATVs that could melt parts or burn drivers, plaintiffs' overpayment theory was "in direct conflict with the manifest defect rule and does not create an Article III injury-in-fact. *See, e.g., O'Neil* [*v. Simplicity, Inc.*], 574 F.3d [501,] 504 [(8th Cir. 2009)]." *Id.* at 988. But *O'Neil* only addressed claims under Minnesota law, never referencing Article III. Furthermore, *Johannessohn* contradicted prior precedent where the Eighth Circuit held that claims for overpayment or diminished value "are economic injury sufficient to establish Article III standing." *George v. Omega Flex, Inc.*, 874 F.3d 1031, 1032 (8th Cir. 2017).

The Panel's decision also does not conflict with *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Pet. 11. In *TransUnion*, the Supreme Court

considered whether consumers whose credit files contained false terrorist alerts could sue the credit reporter. 594 U.S. at 421. The Court found standing existed only for class members whose reports were disseminated. *Id.* at 433, 437. The Court did not adopt TransUnion's argument that standing required both dissemination and manifestation of some harm from the dissemination, i.e., creditors denying credit. *Compare id. with* Brief for Petitioner at 42, *TransUnion,* 594 U.S. 413 (No. 20-797), 2021 WL 409753, at *42.

Here, the cognizable injury resulted from all class members purchasing vehicles with a hidden defect. Plaintiffs contend this economic injury can be shown classwide, without a manifested defect. Each court that has considered the manifest defect argument since *TransUnion* has rejected GM's argument and found standing. *See, e.g.*, *Evenflo Co.,* 54 F.4th at 36; *Droesser,* 2023 WL 2746792, at *7; *White v. Gen. Motors LLC*, No. 1:21-cv-00410, 2023 WL 3278460, at *4 (D. Colo. May 5, 2023); *Hampton v. Gen. Motors*, LLC, 631 F. Supp. 3d 1041, 1046 (E.D. Okla. 2022); *Quackenbush v. Am. Honda Motor Co., Inc*., No. 20-05599, 2021 WL 6116949 , at *5 (N.D. Cal. Dec. 27, 2021); *Siqueiros v.*

*Gen. Motors, LLC*, No. 16-cv-07244, 2021 WL 4061708, at *5 (N.D. Cal. Sept. 7, 2021).

GM also cites to *Earl v. Boeing Co.*, 53 F.4th 897, 903 (5th Cir. 2022), Pet. 13, where customers alleged they overpaid for flights on dangerous MAX 737 planes. However, Plaintiffs solely relied on an overpayment model to assert how much less customers would have paid had the market knew of the risks. The problem was, once the risks were known, the planes were grounded; customers would have paid zero, and ticket prices for non-MAX flight would have increased. *Id.* at 903. GM can show no such flaw in any of Plaintiffs' damages models. Plaintiffs bought a durable good (not a service) and showed diminished value.

### 2. The Panel's decision adheres to *Daffin*

GM claims "at least a dozen states" bar economic claims where an alleged defect has not manifested. Pet. 6. While GM cites to the Panel's opinion for support, the Panel was merely quoting GM's own argument. Op. 14. The parties disagree on whether and what states require a manifest defect for warranty or consumer fraud claims. Indisputably, few of the 26 states at issue have decisions from a state supreme court deciding this matter. Moreover, GM already knows the illogic of requiring

a defect to manifest when economic injury (via an overpayment or diminished resale value) can already be established. *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 276-77 (S.D.N.Y. 2018).

But resolving which states may require a manifested defect before class certification is not required. In *Daffin,* this Court affirmed class certification of a warranty claim, observing that receiving a vehicle with a design defect established an Ohio warranty law claim. 458 F.3d at 553. This Court recognized that "[i]f at a subsequent point in the litigation the district court determines that the express warranty is limited to defects that manifest themselves within the warranty period, the district court may consider at that point whether to modify or decertify the class." *Id*. at 554. Judge Lawson relied on *Daffin*. R.284, PageID.20430. The Panel agreed that if any state's law required a manifested defect, the court could cull consumers who lacked a manifested defect through Rule 56 or "disposal after trial." Op. 16.

The Panel correctly observed all Class Representatives experienced one or both of the transmission problems. Op. 12. Identifying absent class members from states that may require a manifested defect can be readily done using the labor codes GM itself selected to identify the two

transmission defects. R.201-114. Both Plaintiffs' and Defendant's experts used these same codes. R.200-3, PageID.10497-98; R.176-2, PageID.6653, 6675. Thus, if the District Court finds a state law requires a manifested defect, a claims administrator can use the "comprehensive records of sales, registration, and warranty service data already produced" to reject those who did not present for a transmission repair consistent with the transmission defects. R.284, PageID.20441. *Accord Quackenbush v. Am. Honda Motor Co., Inc.*, 2022 WL 1240866, *2 (N.D. Cal. Apr. 27, 2022) (noting "Honda repair records will facilitate the sorting.").

Alternatively, if the District Court decided at summary judgment that a certain state required a manifested defect, it could redefine that state's class to those who experienced the defect and sought repair. This Court just recently blessed such a class definition. *See, e.g., In re General Motors, LLC*, No. 23-0509 (6th Cir. Jun 20, 2024), (ECF No. 8) (rejecting 23(f) petition in *Jefferson* on grounds of manifestation of defect and presentment of repair); *Jefferson v. Gen. Motors, LLC*, No. 2:20-cv-02576, 2023 WL 5662596, at *2 (W.D. Tenn. Aug. 31, 2023) (defining the class by presentment for repair for the defect at issue). Neither the Panel nor Judge Lawson disregarded state law matters like presentment or a

manifest defect, but followed *Daffin* in relegating these non-predominating issues to subsequent proceedings.

3.    The Panel's decision adheres to *Fox*

Despite *Daffin*, GM claims the Panel decision is irreconcilable with *Fox v. Saginaw Cnty., Michigan,* 67 F.4th 284, 301 (6th Cir. 2023) because it pushes the issue of deciding whether a state law requires a manifested defect until after class trial, and is at odds with out of circuit decisions. Pet. 2, 6-7 (citing *Johannessohn*, 9 F.4th at 988; *Cole*, 484 F.3d at 729; *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1315 (11th Cir. 2023)). GM is incorrect as to *Fox*, *Cole*, and *Tershakovec*. *Johannessohn* never reached the state law question having wrongly found no standing.

In *Fox*, the plaintiff sued his home county and 26 other counties that did not injure him, arguing that they also wrongly kept excess proceeds from delinquent taxpayer property sales. This Court found the district court failed to describe any of the elements of Fox's claims, nor explained which could be proved classwide. 67 F.4th at 301. Further, the district court certified a class without discovery and did not explain how to handle issues such as lienholders. *Id.* at 301-02. None of this resembles this case where extensive discovery was taken; the District Court and

Panel both set out the elements and how the common evidence could prove them; and explained extensive service records could be used to cull class members unable to show a manifested defect, if required. GM may not like this plan, but unlike *Fox*, a plan exists.

GM cites *Cole* to argue state law on the manifest defect rule precludes class certification, though it omits that the Fifth Circuit rejected the same Article III argument GM makes here. In reality, the *Cole* court simply rejected a nationwide class action seeking to apply Louisiana law because of a lack of analysis of state law differences, including as to a manifest defect requirement. 484 F.3d at 726. Plaintiffs did not seek a nationwide class here, and *Daffin* gives a mechanism for addressing any states later found to require a manifested defect.

*Terashokovec* included a similar rebuke to a district court for not considering salient state law differences like the manifest defect rule or reliance requirements. 79 F.4th at 1304. The court remanded for the manifest defect analysis at class certification. *Id.* at 1315. *Daffin* simply permits this analysis later. Also unhelpful to GM, *Tershakovec* affirmed class certification of several of the same states at issue here (Florida, New

York, and Washington) and found only two of the 26 states here might require reliance. *Id*. at 1311, 1316. (Texas and Tennessee).

**B.  The Panel Correctly Applied *In Re Ford* to Affirm that the District Court Rigorously Analyzed the Evidence**

1.  <u>The Panel and the District Court considered but were unmoved by GM's spin on the evidence</u>

In *Ford*, this Court vacated the district court's certification, finding a failure to "grapple with" Ford's arguments that there had been "many design and manufacturing changes" over the years, including two that purportedly would have remedied plaintiffs' issues. 86 F.4th at 723, 728 (6th Cir. 2023). On the common question of knowledge, the Court noted "Ford may well have believed any existing problem was fixed." *Id*. The Court instructed the trial judge to go beyond a "surface-level approach" and explain whether it had considered whether Ford's changes "made any material difference to the class's alleged defect." *Id*.

Here, the District Court devoted 22 pages to discussion of the defects, GM's knowledge, and GM's "Counterarguments." R.284, PageID.20410-31, 20440. The Panel included four pages of factual background. Op. 2-6. Both cited to:

- GM's Open Investigative Reviews identifying root causes. R.284, PageID.20402, Op. 3;

13

- A program overview that found GM knew of shudder and shift quality issues from pre-launch through 2019. R.284, PageID.20403, Op. 3;

- GM and expert analysis showing warranty claims 10 to 100 times above GM's thresholds. R.284, PageID.20425-28, Op. 4.

Unlike *Ford*, the evidence here shows no effective design changes during the class period. *Weidman v. Ford Motor Co.,* No. 18-CV-12719, 2022 WL 1071289, at *2 (E.D. Mich. Apr. 8, 2022) (Ford claimed its changes reduced warranty claims to 0.5%). *See also* Brief for Appellant at 12, *In re Nissan N.A., Inc.*, (No. 23-5950) (6th Cir. argued Oct. 31, 2024) (noting final software updates reduced the number of sudden braking warranty claims to under 0.31%). GM could not correct the design defects until it deployed a new transmission fluid (Mod1a) in 2019 and a redesign for model year 2023. R.284, PageID.20423-24; Op. 5-6.

GM's disagreement with the Panel's conclusions drawn from these facts is not a basis for en banc review. 6th Cir. I.O.P. 35(a). Further, it strains credulity and shreds credibility when GM qualifies a "fluid problem that may create 'shudder'" as "alleged", Pet. 9, when that was GM's own finding:

**Effect of the Condition:** The customer could experience a shake / shudder feeling that may be described as driving over rumble strips or rough pavement. The vehicle vibration could be at a dissatisfying level, causing them to bring it in for warranty repair.

**Root Cause:** 1. ATF robustness to moisture. Moisture introduced via the vent system causes degradation to the friction characteristics of the automatic transmission fluid. 2. Anti-shudder Durability, the ATF's ability to maintain a positive friction slope over time (age).

Op. 3 (citing R.177-3, PageID.7167). *Accord* Op. 5 (citing GM's expert that Mod1a "corrected the 8L … shudder problem."). It is not surprising that neither the Panel nor Judge Lawson were persuaded by GM when it still minimizes this case as an attempt to "exploit alleged defects in a small percentage of products," Pet. 4, when GM's own engineer noted a 50% warranty rate for shudder, and claim levels so high that GM itself classifies the problem as "almost certain to occur." Op. 4, citing R.224-5, PageID.15527. It rings hollow to decry Plaintiffs for "vaguely describ[ing] the defects as 'harsh shifts and shudder,'" Pet. 4, when GM used similar terms. Specifically, GM used "Shift Quality" and "Shudder" to identify the defects in a proposed service package to replace all MY15-19 transmissions with MY20 versions—regardless of whether the defects manifested:



R.206-13, PageID.12505. This same document contradicts GM's assertion that the District Court (and the Panel) failed to grapple with Plaintiffs' theory that two distinct defects caused shudder and harsh shifts. Pet. 9-10. Furthermore, the Panel quoted from the class hearing transcript where Plaintiffs explained the two distinct defects. Op. 3, 17.

Rather than conflict with *Ford*, the Panel decision embodies the rigorous analysis *Ford* requires.

> 2. <u>The Panel's decision comports with *Rikos* and other decisions finding a reliance element does not automatically preclude class treatment</u>

Contrary to cases GM and its amici cite, the Panel (like the District

Court) rigorously reviewed the applicable state claims as part of 23(b)(3) predominance analysis. Op. 19-35. The Panel agreed that, because the defects required redesigns, "futility" nullified any potential requirement for "presentment for repair" from the predominance inquiry. Op. 19-20. The Panel also assessed whether the consumer laws required individual reliance. It began by affirming reliance did not preclude class as held by this Court in *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 518 (6th Cir. 2015) (Florida, Illinois, New Hampshire, and North Carolina). Op. 21. As to the remaining states, for many, "little case law" existed. *See, e.g.*, Op. 25, 29. The Panel found either no individual reliance requirement existed, or that issues of reliance would not predominate over the common objective questions. *Id*. at 20-33. *Accord Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 566 (6th Cir. 2007) (affirming class, noting "each class member will have to show that she did not enroll in WireWatch, but that is relevant, as the district court concluded, to the issue of damages and not liability").

To give one example why the dispute regarding state law requirements does not compel *en banc* review, consider Texas. Amicus FCA cites *Henry Schein v. Stromboe*, 102 S.W.3d 675, 694 (Tex. 2002) to

argue the reliance requirement for the Texas Deceptive Trade Practices Act precludes class treatment. Br. for FCA US LLC as Amicus Curiae Supporting Pet'r at 3, ECF No. 65. But that decision states, "[t]his does not mean, of course, that reliance or other elements of their causes of action cannot be proved classwide with evidence generally applicable to all class members; classwide proof is possible when classwide evidence exists." *Henry Schein*, 102 S.W.3d at 693. A California court recently relied on *Schein* to certify a class in an auto defect case under the TDPA. *Lessin v. Ford Motor Co.*, No. 3:19-cv-01082, 2024 WL 4713898, at *38 (S.D. Cal. Nov. 7, 2024). Similarly, the Panel noted Texas' reliance requirement does not defeat claims when a uniform misrepresentation (here, an omission) is presented. Op. 31. The Panel correctly found the District Court did not clearly err in certifying the DTPA claim. This Court should adhere to its rule eschewing en banc review to sort out state law interpretations. 6th Cir. I.O.P. 35(a).

## C.  GM Waived Its Dubious Class Defense of Absent Class Member Arbitration

GM's arbitration argument regarding class certification was always too little, too late. It was late because GM waited three years into the litigation to assert potential arbitration against absent class members as

a defense when answering a third amended complaint in 2022. R.194, PageID.9295. Having failed to plead arbitration as an affirmative defense and actively participated in the litigation, GM waived the defense. *Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009).

GM argues it lacked the ability to move to compel absent class members to arbitration before class certification, relying upon *Gutierrez v. Wells Fargo Bank, N.A.*, 889 F.3d 1230 (11th Cir. 2018). Pet. 14, 16. But the waiver here is the failure to *assert the defense,* not to compel arbitration. The *Gutierrez* court first applied a waiver analysis and found Wells Fargo preserved the defense by asserting arbitration as to absent class members in its answers and in response to the Court's scheduling order. *Id.* at 1237-39. GM didn't.

GM's arbitration defense is also too little to combat class treatment. GM rightly observes that "the rights and obligations of unnamed class members who are not even parties to the lawsuit are not at issue *until after class certification."* Pet. 3 (emphasis added). True. Arbitration is only a forum-selection defense that GM could potentially assert against some absent class members. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021). And not all affirmative defenses

peculiar to some class members defeat predominance. *Tyson's Foods v. Bouophakeo*, 577 U.S. 442, 453 (2016).

Here, GM has no signed arbitration agreements with customers. GM hopes that it might identify some class members with arbitration clauses in dealer agreements that GM might seek to compel to arbitration *after the class trial* when those class member make a claim. GM would then decide if the dealer agreement was amenable to GM's dubious "intertwinement" argument. Pet. 14.[2] GM speculates 40% of class members (about 480,000) may have a dealer agreement with an arbitration clause. *Id*. That would mean some 520,000 8L buyers do not— more than enough for Rule 23(a)(1)'s numerosity requirement. Because GM's post-trial arbitration defense cannot impact the class trial on common issues, it cannot matter to 23(b)(3) predominance. The Panel did not err by disregarding it.

## IV.  CONCLUSION

GM has failed to show the Panel's decision conflicts with this Court's or Supreme Court precedent. The petition should be denied.

---

[2] To date, GM has consistently lost this argument. *See, e.g., Harper v. General Motors, Corp.*, 2:21-cv12907-DML-DRG (E.D. Mich.), R.43, PageID.550; R.43-1, PageID.557-61.

Dated: November 18, 2024

Respectfully submitted,

*/s/ Douglas J. McNamara*

Douglas J. McNamara
Karina G. Puttieva
Madelyn Petersen
**Cohen Milstein
Sellers & Toll PLLC**
1100 New York Ave. NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
dmcnamara@cohenmilstein.com
kputtieva@cohenmilstein.com
mpetersen@cohenmilstein.com

Theodore J. Leopold
**Cohen Milstein
Sellers & Toll PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL
33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com

*Attorneys for Class Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 5(c)(1), I certify that this response contains 3,896 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: November 18, 2024                    */s/ Douglas J. McNamara*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system, which will cause a copy of said document to be electronically transmitted to all counsel of record.

Dated: November 18, 2024                    */s/ Douglas J. McNamara*